CHARLES W. BARTH v. CLAY TOWNSHIP, HARRISON COUNTY, MISSOURI, and WILLIAM JONES, GEORGE HAMILTON, ROY HULLINGER, CLEO PHILLIPS, GRANT SNETHENS, LLOYD DELONG and HERBERT LAND, Appellants.—No. 39353.—188 S. W. (2d) 660.

Division Two, July 2, 1945.

*E. L. Redman* and *C. B. DuBois* for appellants.

*C. C. Ross* for respondent.

WESTHUES, C.—Plaintiff instituted a mandamus proceeding in the Circuit Court of Harrison County, Missouri, against Clay township and certain individuals who had served on the township board and two defendants who had been road overseers, to compel

them to replace five culverts in a public road which had been removed by the road overseers at the direction of the township board. The trial court entered a decree against the township and the defendants who had served on the board to replace four of the culverts. No decree was entered against the road overseers. The township and the defendants against whom the decree was entered appealed.

The road involved the northerly portion of a north and south road running through sec. 32 and fractional sec. 29, township 67, in Clay township, Harrison county, Missouri. The record shows that there was a public road running east and west along the northerly line of sec. 29, which is likewise the state boundary line between Iowa and Missouri. It was also shown that there was a road running in an easterly and westerly direction along the southerly line of sec. 32. The road here in question connected with the two east and west roads just mentioned. The two east and west roads were also connected by north and south roads. One was located about a mile and a half west of the road in question and the other about a mile or so east of the road in question. The road from which the culverts were removed ran due north from the southerly line of sec. 32, beginning at a point about the center of the southwest quarter of sec. 32, thence north to a point a short distance north of the center line of sec. 32, thence due east about one-fourth mile, thence north along about the center of sec. 32 and through fractional sec. 29 to the Iowa state line where it connected with the east and west road above mentioned. It is the northerly half of this road that is in controversy in this case. It begins at the point where the road turns east near the center of the section. The evidence in the record introduced by plaintiff disclosed the following state of facts concerning the culverts in controversy. Plaintiff's home was located on the western half of sec. 32, near the center line thereof, west of the roadway above described and a short distance south of the point where the roadway turned eastwardly. The southerly portion of this road, that is, from plaintiff's home south to the section line where it connected with the east and west road, was not disturbed. If plaintiff, therefore, desired to travel to any point north of his home he went south and then east or west to the roads running north which were above described. Plaintiff's evidence as to the condition of the portion of the road where the culverts were taken out was substantially as follows. East of plaintiff's home was located what was referred to in the evidence as Indian creek. This creek crossed the roadway and it was necessary for north bound travelers to ford it since there never had been a bridge or culvert constructed over the creek. The evidence showed that the embankments, at the time of the trial, were in such condition that it was difficult, if not impossible, for cars or teams and wagons to use the ford. Plaintiff testified that the ford could be repaired with little difficulty by the use of a team and scraper. The evidence showed that the five culverts,

the subject of this lawsuit, were located east and north of Indian creek. These culverts consisted of metal pipes, referred to as tubes, about eighteen feet in length, a number of them twelve inches and others eighteen inches in diameter. In August, 1940, two of these were removed by the road overseer on order of the township board and were placed in some other roadway within the district. Later in 1942, the other three culverts were removed in the same manner. The order of the board to the road overseer reads as follows:

"Clay Township Board hereby authorizes you to remove the tubes from the old abandoned road running north from the 40 acre farm belonging to Merl Barth, and locate them in the Andover to Akron road."

Plaintiff offered evidence as to the use of this road by the public. The evidence, however, was very indefinite and unsatisfactory. Only one witness gave a definite answer as to the number of travelers per day. This witness, a son of plaintiff, testified as follows:

"Q. This road that goes east a quarter and on up to the Iowa line, how often would you say—your best estimate—how often people used that road until these culverts were taken out? A. A man would have to average that maybe when the road was good for travel I expect at least some one through it every day.

"Q. You mean some vehicle of some kind? A. Yes, some vehicle."

There were no homes along this portion of the roadway where the culverts were taken out. The evidence showed that prior to the time the road overseer removed any tubes one of the culverts or tubes had been washed out. The trial court, by its decree, did not order the township authorities to replace this culvert. Plaintiff also introduced evidence that the traveling public now uses a private roadway over his field and a field of a neighbor in going north instead of the roadway where the culverts had been taken out. Witnesses called by plaintiff also testified that this private roadway had been used for many years prior to the time the culverts were removed. The evidence justifies the assertion that the private roadway was sparingly used.

The question for decision is whether a court in the above circumstances should issue a writ of mandamus, at plaintiff's request, compelling the township authorities to replace the four culverts. We think not. Suppose the township authorities complied with the decree rendered, would that restore the roadway so as to render it usable? The answer must be in the negative. The decree ordered the authorities to restore four of the culverts. The one that had been washed out was not included. The evidence showed that the ditch at this point was so deep that vehicles could not pass over it. Again, there is the obstacle at Indian creek which rendered the road impracticable if not impassable. The general rule is that a writ of mandamus will not issue where it would be useless. 38 C. J. 692, sec. 262. A writ should not be issued where it will not result in any benefit to the ap-

plicant. 38 C. J. 551, sec. 23. In State ex rel. Star Pub. Co. v. Associated Press, 159 Mo. 410, 60 S. W. 91, l. c. 105, this court en banc said:

". . . a court . . . will not award a discretionary writ as now here prayed for the mere purpose of determining an empty and barren technical right in behalf of a petitioner, it will 'let well enough alone.' "

Suppose the township authorities complied with the decree and returned the tubes to the road in question, what would become of the roadway where the tubes are now being used for culverts? Would another taxpayer be entitled to have that roadway restored by again moving the tubes? We think not. The township board, in counties under township organization, is, under Art. 17, chap. 46, Mo. R. S. A., R. S. Mo., 1939, clothed with authority to maintain and supervise the roads located in the township. When the township board of Clay township ordered the road overseer to remove the culverts and use the tubes in the construction of culverts on some other road in the district the township board's action was not purely ministerial but to a large degree discretionary. The judgment of a board so exercised cannot be controlled or reviewed by courts in a mandamus or injunction proceeding. 32 C. J. 242, sec. 384; 38 C. J. 689, sec. 258; State ex rel. State Highway Commission v. Sevier, 339 Mo. 479, 97 S. W. (2d) 427. One of the defendants, William Jones, a road overseer, was called as a witness by plaintiff. He testified that he removed two of the tubes in August, 1940; that he saw no tracks or other evidence that the road had been used and in his opinion the road was impassable; that had he thought the road could be used he would not have taken the tubes. He also testified that the tubes were needed on another road and that the district was short of money.

We have examined the cases cited by respondent and will refer to a few. In State ex rel. Morris v. Hannibal & St. J. R. Co., 86 Mo. 13, the railroad company was compelled to perform its duty under the law of restoring to good condition a public highway it had disturbed. This was purely a ministerial duty imposed by law upon the railroad. The case is not in point. In Walther v. Cape Girardeau, 166 Mo. App. 467, 149 S. W. 36, a writ of mandamus was issued to compel the city to restore a lot to its original condition where the city had, without legal authority, cut a ditch through a private lot. It is evident that that case is not in point. Other questions briefed by respondent, for example, that the township board had no authority to declare the road vacated because of abandonement, are not in the case. The township board made no attempt to vacate the road. We need not review the other questions briefed because, as we have concluded, plaintiff under his own evidence was not entitled to the writ prayed for.

The judgment of the trial court is reversed and the cause remanded with directions to dismiss plaintiff's petition. It is so ordered. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.