932

C. Curley Gerhardt v. Plastics Research .
& Development Corp.

5-4069                                411 S. W. 2d 1

Opinion delivered February 6, 1967

*Franklin Wilder,* for appellant.

*Shaw, Jones & Shaw,* for appellee.

Paul Ward, Justice. This is an action to cancel a written contract and to recover on cross-complaint. Some of the pertinent facts which are not in dispute are briefly summarized below.

C. Curley Gerhardt (appellant) "invented" a product called "Dome-Sight" battery cap. This is a product which fits on top of each cell of an automobile battery, the purpose of which was to make it easy to determine whether the battery needed water. On June 2, 1965 he entered into a rather lengthy written contract with the Plastic Research and Development Corp. (appellee) wherein it was agreed that when and if a patent was secured on the product it would be manufactured and sold by appellee, and appellant would receive a specified percentage of the net sales. Within a few weeks after the contract was executed it was learned that no patent could be secured. On December 14, 1965 appellant filed suit in chancery court to cancel the contract. Appellee answered, praying judgment for money advanced appellee under the terms of the contract and for other expenses incurred.

At the conclusion of the trial the court cancelled the contract (as requested by appellant) and awarded appellee judgment against appellant in the amount of $8,041.61.

On appeal appellant makes three separate contentions for a reversal but they can be disposed of by answering two questions: *One*, is appellant liable to appellee in any amount, and; *Two,* is the judgment excessive?

*One.* The answer to this question is in the affirmative, but to explain the reason it is necessary to examine briefly the terms of the contract and the events following its execution.

The agreement provides: (a) appellant was to secure a patent on the product, and appellee was to advance some of his expenses in doing so; (b) if, however, a patent could not be secured all such advances were to be repaid to appellee; (c) appellee, at his own expense, was to manufacture and sell the product, and appellant was to receive 5% of the net profits; (d) appellee was to have exclusive franchise during the life of the patent and any extension thereof; (e) during the early stages of the operation appellee was to advance appellant $300 per month (beginning June 2, 1965) until mass production began, but all such advances were to be refunded to appellee out of appellant's 5% of the net proceeds.

The record discloses: (a) It became known to both parties about the first of August, 1965 that a patent could not be obtained; (b) following this turn in events appellant and appellee got together and orally agreed to continue the undertaking under the terms of the written contract; (c) pursuant to this oral agreement appellee continued to make molds and to prepare for mass production until appellant filed this suit on December 14, 1965 to cancel all contracts. At that time appellee asked to be reimbursed for expenses incurred if the contract be cancelled.

The trial court found that "the parties agreed orally to continue under the same terms and conditions of said contract . . ." and also agreed that appellant would reimburse defendant for its expenditures if defendant would continue to give plaintiff Three Hundred ($300) per month, would continue to work for production of the article, and would aid in the sale and distribution of same.

It is our view that, under the above situation, appellant had a right, at any time, to cancel all contracts and stop all operations thereunder, but that he had no right to do so without reimbursing appellee for expenses incurred. It is well settled by many decisions of this Court that an oral agreement to alter a written contract is valid. See: *Byrd* v. *Bertrand,* 7 Ark. 321; *Elkins* v. *Aliceville,* 170 Ark. 195, 279 S. W. 379; *Dodson* v. *Wade,* 193 Ark. 534, 101 S. W. 2d 182, and *Swift* v. *Lovegrove,* 237 Ark. 43, 371 S. W. 2d 129. It is not denied that appellee did incur considerable expense in attempting to comply with the contract as modified.

It was contended by appellant that the product being produced by appellee was defective, but the record contains ample testimony to justify the court in finding that the defects were minor, that they were to be expected at first, and that appellee was in the process of correcting same when this suit was filed.

*Two.* The trial court found that appellee had incurred expenses in the sum of $8,387.42 in trying to comply with its contracts with appellant. In our opinion the court's finding is in accord with the weight of the evidence.

Appellee introduced in evidence, without objection, its Exhibit No. 3. This exhibit itemizes in minute detail (including dates, check numbers and explanations) a total expenditure of $8,387.42. The exhibit was identified by appellee's witness, Loren Jones, an accountant, who testified:

"Q. Did you make this analysis?

A. I did.

Q. From what was it taken?

A. Directly from the ledgers, journals, accumulations and work sheets of Plastics Research and Development accounting department."

As previously pointed out, no objection was made by appellant to the introduction of the exhibit, he did *not* ask to see the original records, and he introduced no testimony to show any item of expense was incorrect. We must, therefore, sustain the court's finding on this point.

Affirmed.