Joseph **DESLOGE** et al., Appellants,

v.

**COUNTY OF ST. LOUIS** et al., Respondents.

No. 52960.

Supreme Court of Missouri,
Division No. 1.

Sept. 9, 1968.

Joseph B. Moore, St. Louis County Counselor, Thomas W. Wehrle, Deputy County Counselor, Robert N. Rosenblum, Asst. County Counselor, Clayton, for respondents, St. Louis County and others.

Ziercher, Tzinberg, Human & Michenfelder, Albert A. Michenfelder, Jr., Clayton, for respondents, The Mayfred Corp., Arthur J. and Kevin E. Daniels and Herman J. and Mary G. Meyer.

David G. Dempsey, Dempsey & Dempsey, Clayton, for plaintiffs-appellants.

HIGGINS, Commissioner.

Action to have the zoning ordinance (Ordinance 3552) of St. Louis County declared invalid and void due to alleged procedural defects; to have it declared invalid, void, arbitrary, unreasonable and capricious insofar as it places property of defendants Daniels, Mayer, and Mayfred Corporation (Mayfred) in District R–4 (7,500 square feet minimum size residential lots); and to have the County Supervisor, Public Works Director, and Members of the St. Louis County Council enjoined from granting any permits to Mayfred Corporation to build on its R–4 property.

Judgment denied relief to plaintiffs and upon their appeal St. Louis County, a po-

litical subdivision of the State of Missouri, is a party defendant-respondent. Witt v. City of Webster Groves, Mo., 383 S.W.2d 723, 725 [1].

On June 13, 1946, St. Louis County enacted its first zoning ordinance and the Mayfred property in the Florissant Valley of northern St. Louis County was zoned B–4 Residential, one residence per acre. At that time north St. Louis County had not experienced residential growth of note, but has since become one of the fastest growing areas of the county due to the industrial complex in and around the St. Louis airport.

In 1958 St. Louis County employed Harland Bartholomew and Associates to prepare an inventory of all actual uses of land without regard for existing zoning. This study, "A general Land Use Plan," was completed in January, 1960, and stated that "the major segments of the level land still available for development are in the northern part of the county generally in the Florissant Valley and around Spanish Lake." Based on this study the St. Louis County Planning Commission in the Spring of 1961, prepared a more detailed study, a "Guide for Growth," which proposed proper, as opposed to actual, uses of land in the county. "Guide for Growth" stated: "In general, high and medium density (7,500 square feet lots) residential development is proposed throughout the level Florissant Basin west of Halls Ferry Road."

After approximately two more years of work, the Planning Commission and its staff in May, 1964, completed text and maps for a proposed new Master Zoning Ordinance for all of St. Louis County lying outside incorporated cities. Between May and July 14, 1964, the Planning Commission held a series of public hearings on the proposed Master Zoning Ordinance.

On July 21, 1964, the Planning Commission also held a public hearing on a specific request of Mayfred Corporation to rezone its 350-acre tract south of the intersection of Shackelford and New Halls Ferry Roads in North St. Louis County from B–1 classification under the 1946 Ordinance to R–4. Both proponents and opponents, including many of the parties to this action, were heard. The Commission met in executive session August 3, 1964, recommended denial of the request, and transmitted that recommendation to the St. Louis County Council. The Council entered an order September 3, 1964, whereby the recommendation of the Commission was ordered to "be received and filed."

The text and maps of the proposed new Master Zoning Ordinance, as prepared by the Planning Commission, were submitted to the County Council in December, 1964. The proposal recommended placing the Mayfred tract in a new category, nonurban, which would limit residential development to one residence per three acres.

Ordinance 3552, embodying the proposed zoning code, began its life when introduced in the Council as Bill No. 1, January 7, 1965. Bill No. 1 had for its purpose the repeal of the existing zoning ordinance relating to zoning of the unincorporated area of St. Louis County and enactment of a new chapter relating to the same subject. A public hearing was held by the Council on Bill No. 1 January 28, 1965, pursuant to notice dated January 18, 1965. The notice advised of the date, time, and place of the hearing, and that "interested persons are invited to express their views * * *." Provision was made for continuing the hearing beyond regular working hours if necessary for all persons to be heard and advised also that "The Council will review written submissions."

The record does not indicate that any of these appellants or their representatives expressed themselves on any of the proposed zoning; however, appellants' brief concedes their presence at the hearing, alleging "Not a word, spoken or written, is raised to protest the proposed nonurban zoning of the Mayfred Tract. Those present in favor of that recommendation go away secure in the thought that the ugly

and monotonous sprawl of suburbia has finally been stopped."

Mayfred Corporation expressed its position in favor of R–4 zoning of its tract and registered its objection to the proposed nonurban classification of its property by written submission to the Council on January 28, 1965. This protest and submission recited the nonurban classification in the proposed ordinance which refers "to 'areas within which rough natural topography, geological conditions or distances from urbanized areas cause practical difficulty or excessive cost in providing and maintaining public roads and public or public-utility service and facilities or areas where significant non-urban uses have been established.' * * * 'the purpose of these regulations is to restrain development which would require a burdensome or disproportionate expenditure of public funds for the provision of necessary supporting roads and facilities.'" The written submission emphasized that, contrary to this definition of the nonurban district, the Mayfred tract was flat, lending itself to residential development of 7,500 square feet lots; all public utilities already exist in the area; road access already is available by Shackelford and New Halls Ferry Roads which are under plans for state improvements; the property adjoins property annexed to the City of Florissant zoned for 7,500 square feet residential lots and is but 500 feet from a similarly developed subdivision; a market for such lots exists, and this is an appropriate area for their development.

Between the hearing January 28, 1965, and April 8, 1965, the Council met in executive session on six occasions to consider changes in the ordinance. On April 3 and 4, 1965, a weekend session, the Council completed nine changes in text and sixty-five changes on the maps.

On April 8, 1965, Substitute Bill No. 1 for Bill No. 1 was introduced in the Council. This bill reflected the changes agreed upon by the Council, among which was R–4 zoning of the Mayfred tract. The amended bill was adopted as Ordinance 3552, April 8, 1965, by a vote upon suspension of the rules.

Appellants contend that Ordinance 3552 was enacted by the St. Louis County Council without proper notice and public hearing. The argument is that at the public hearing held by the Council "there was no hint of any possible change in the recommendation of the Planning Commission that the Mayfred Tract be zoned for nonurban use"; that the change to R–4 residential use was made in executive session without notice, actual or constructive, of the possible change; that this, plus enactment of Substitute Bill No. 1 (Ordinance 3552) on the day of its introduction, "prevented appellants from expressing their views regarding the proper zoning of the Mayfred Tract," and thus "requirements of notice, public hearing, and due process were not met."

The question thus posed is: After notice has been given and a hearing has been held by the legislative body (St. Louis County Council) on a proposal for comprehensive zoning of all unincorporated areas in the county, is the Council thereafter free to modify the proposal without further notice, or is the Council limited to consideration of the recommendation concerning which notice was given? See City of Monett v. Buchanan, Mo., 411 S.W. 2d 108, 112. See also Annotation 96 A.L. R.2d 449: "Validity and construction of statutory notice requirements prerequisite to adoption or amendment of zoning ordinance or regulation," and particularly the problem of notice as it "concerns measures noticed in one form and passed in another," 96 A.L.R.2d l.c. 457.

Missouri has recognized the existence of two views in other jurisdictions for resolution of this problem. In one view, where sufficient notice is given prior to the public hearing, the zoning body may change or amend the proposal in the course or passage without another public hearing; in another view, the zoning ordinance may be

void if substantial amendments are made after the public hearing on the proposal without any new notice and hearing on the changes and amendments. The authorities under the second view demonstrate additional problems with what constitutes a substantial change. Each case must be viewed in its own posture and even "compliance (with second notice requirements) may be excused where the contesting party suffered no prejudice or other harm as a result of the improper notice, or where, despite its alleged deficiencies, he was sufficiently informed to have attended the hearing or at least to have known that it was taking place." 96 A.L.R.2d l.c. 456; City of Monett v. Buchanan, supra, 411 S.W.2d l.c. 113 [1–3].

Appellants do not question the sufficiency of the notice given for the public hearing held by the Council January 28, 1965. By that notice they were advised that written submissions, as well as oral expressions, would be considered. Counsel concedes that some of the appellants or their representatives actually attended the public hearing and that they chose not to voice any view. Nor did they voice any opposition to any written proposal concerning Mayfred that might have been filed with the Council pursuant to the invitation to do so in the notice of the public hearing. The opportunity of appellants to speak at the January 28, 1965, public hearing clearly existed and is not denied. In addition appellants were aware of Mayfred's prior effort to obtain the recommendation of the Planning Commission for R–4 zoning of its tract. At the public hearing held by the Commission in July, 1964, for the consideration of such specific proposal, appellants and their representatives were heard and filed written views. Had they checked accurately the Council record, they would have known also that upon receipt of the Commission's recommended denial of the petitioned rezoning, the Council "received and filed" the recommendation as opposed to a denial of it as erroneously assumed by appellants in their brief. The

matter was thus a continuing one for consideration by the Council at a time when the Commission's recommended comprehensive zoning ordinance for all unincorporated areas could be expected to be received by the Council. The executive sessions of the Council took place over eight weeks and resulted in but nine changes in text and sixty-five changes in maps in a comprehensive zoning ordinance encompassing some 208,000 acres of which Mayfred represented but .0017 percent.

It is well to note at this point that under Article III, Section 15, Charter, St. Louis County, "an ordinance which has been introduced may be amended after introduction and prior to its passage, provided such amendments are germane to the original purpose of the ordinance." Both Bill No. 1 and the amended or Substitute Bill No. 1 for Bill No. 1 had the same purpose, i.e., that of providing a comprehensive zoning code for the unincorporated area of St. Louis County.

■ As in City of Monett v. Buchanan, supra, 411 S.W.2d l.c. 114, where the comprehensive zoning ordinance as proposed by the zoning commission was amended after public hearing and "several informal meetings and discussions" by the city council and enacted as amended without a second notice and hearing, the complaint here is the lack of a second or additional notice that the Council would meet at other times before finally enacting its comprehensive Zoning Ordinance. It is not claimed that the Council was bound to adopt the Commission's recommendation without change, and indeed it was not, State ex rel. Better Built Home & Mortgage Co. v. Davis, 302 Mo. 307, 259 S.W.2d 80, 82 [2], Hewitt v. County Commissioners, Md.App., 151 A.2d 144, 148–149 [2]; or that the Council could not adjourn from time to time and follow the public hearing with executive sessions; or that the Council was bound to pass its comprehensive Zoning Ordinance at the duly-called meeting and hearing January 28, 1965.

Neither is it argued or shown that any statute, charter provision or other ordinance required a second or further notice once the Council gave a notice which concededly advised appellants of the scope of the public hearing at which they were in attendance with opportunity to speak or submit their views in writing. Nor is there any suggestion "of improper motives on the part of the zoning authority" (the County Council) in amending its proposed ordinance, a compelling factor in some cases. 96 A.L.R.2d l.c. 457. Under the circumstances of this record it may not be said that Ordinance 3552 was not validly adopted on the ground there was not a second or further notice of another meeting of the Council at which the Ordinance in its final form would be enacted.

■ Appellants cite cases from other jurisdictions, Castle v. McLaughlin, D.C.C., 270 F.2d 448, Shefler v. City of Geneva, N.Y., 1 Misc.2d 807, 147 N.Y.S.2d 400, Callanan Road Improvement Co. v. Town of Newburgh, N.Y., 6 Misc.2d 1071, 167 N.Y. S.2d 780, City of Amarillo v. Wagner, Tex., 326 S.W.2d 863, and Fish v. Town of Canton, 322 Mass. 219, 77 N.E.2d 231, following the previously mentioned view that a zoning ordinance may be void where substantial amendments are made after the public hearing without any new hearing on the changes. It is not necessary to distinguish separately each of these cases because it already has been demonstrated that appellants had notice of a public hearing at which they could express their views. That notice also made them aware that written submissions were to be anticipated and, in the case of Mayfred in particular, they had previously expressed their position when the matter was before the Planning Commission, all of which was transmitted to the Council. As previously noted, second notice requirements may be excused even where substantial changes are made if, as

in this case, there is no showing by the opposing parties that they have suffered any prejudice, adverse effect, or other harm as a result of improper or inadequate notice.

Appellants' second attack on Ordinance 3552 is that in placing the Mayfred tract in R–4 district, it is "clearly opposed to the general welfare and discriminatory legislation singling out the property of defendant Mayer for special treatment." Appellants also characterize this point as the "issue of spot zoning," and charge that the Council's action was unreasonable and arbitrary and that the Ordinance as it zones the Mayfred tract does not rest on some reasonable basis of classification. In stating their point, appellants emphasize that the Council had before it in support of the Commission's recommendation of non-urban use of the Mayfred tract, "the fact of its then non-urban character, the facts concerning the extreme hardships caused the Hazelwood School District by unrestrained development of subdivisions on small lots, the fact that the Council itself had refused to rezone this same tract to this same use only seven months previously,[1] and the united opinions of its professional planning staff, Planning Commission, and independent planning consultant."

A number of principles have been announced for guidance of courts in disposing of this issue.

■ The legislative body, in this instance the St. Louis County Council, has the duty to determine the use classification to be given any particular area. Unless it should appear that the conclusion of that body is clearly arbitrary and unreasonable, the court cannot substitute an opinion for that of the Council in zoning the property in question and establishing the boundary lines. If the Council's action in zoning a property is fairly debatable, the court cannot substitute its opinion as to appro-

1. As previously indicated, appellants continue to err in this statement. The only Council action of record referring to the Mayfred application to rezone its tract to R–4 reflects that the denial recommended by the Planning Commission was simply "received and filed" by the Council.

**132**

priate zoning. Landau v. Levin, 358 Mo. 77, 213 S.W.2d 483, 485 [2, 3]. The Zoning Ordinance in question having been enacted by the legislative body is presumed to be valid and appellants, having challenged the reasonableness of the ordinance as applied to specific property, have the burden of proving its unreasonableness. Flora Realty & Inv. Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771, 778 [6]. See also Downing v. City of Joplin, Mo., 312 S.W.2d 81, 84 [3, 4].[2]

The pertinent inquiry is thus not what matters may have been literally or physically before the Council or present in the lawmakers' minds, but rather whether the Council's action when viewed in the light of the facts existent at the time of enactment of the Ordinance was reasonably doubtful or fairly debatable.

In amplification of facts previously stated, additional matters should be noted.

■ The 350-acre Mayfred tract is a triangularly-shaped tract bounded on the northeast by New Halls Ferry Road (and west of Halls Ferry Road), on the west by Shackelford Road, and on the southeast by Patterson Road. At the time of passage of Ordinance 3552 and at the time of trial of this case, the Mayfred tract was directly north of and adjacent to land newly annexed to the City of Florissant zoned A–6 by that city for 7,500 square feet residential lots.[3] New Halls Ferry Road (State Route AC), Shackelford Road and Patterson Road are hard-surfaced, 2-lane roads. New Halls Ferry is the major route from the area of the tract running southeast to Lindbergh Road (Route 140) and to Interstate Route 270 and thence

immediately to downtown St. Louis City and to the airport industrial complex. The Missouri State Highway Commission had plans for widening two lanes of New Halls Ferry north of Lindbergh and to four lanes south to Interstate 270. Zoning of the Mayfred tract under the 1946 Ordinance was B–1, one residence per acre. This would have permitted approximately 350 homes. The Council's classification under Ordinance 3552 of R–4 permitted residences on lots of a minimum size of 7,500 square feet, and subdivision of the 350-acre tract under that classification would result in approximately 1,200 homes. The zoning recommended by the Planning Commission would have placed Mayfred in the previously defined nonurban district, a category new to St. Louis County in Ordinance 3552. This classification limited residential development to one home per three acres and would thus have permitted fewer residences to Mayfred than were available under the old ordinance. No additional public utilities were necessary to development of Mayfred as a residential area in that water, gas, electricity, and sanitary sewers were either in the tract or immediately available. The Mayfred tract was approximately 500 feet northwest of Mayfred's Wedgwood Subdivision of R–4 lots and approximately 3,000 feet northeast of Flamingo Park, another R–4 subdivision. Mayfred was in the pattern and path of subdivision development moving northeast on Shackelford Road, northwest on New Halls Ferry Road, and north of Florissant.

Gerwin Rohrbach, an expert in land planning, calculated that projections by Harland Bartholomew and Associates for high density zoning in north St. Louis County

2. Compare appeal from decisions of county court acting as administrative agency where actions will not be set aside unless the reviewing court determines that the agency could not reasonably have made its findings and reached its results upon consideration of all the evidence before it. State ex rel. St. Louis Public Service Co. v. Public Service Commission, Mo., 291 S.W.2d 95, 102 [8–10]; Kansas City

v. Rooney, 363 Mo. 902, 254 S.W.2d 626, 628.

3. This annexation was subsequently set aside June 11, 1966, in St. Louis County v. City of Florissant, Mo., 406 S.W.2d 281, and the land adjacent to the Mayfred tract then reverted to nonurban under the St. Louis County Zoning Ordinance.

to accommodate for such land use to 1980 had, by trial time in 1966, been mostly used. He described a substantial portion of the land lying to the east of Mayfred as not available for high density development due to excessive slopes and vast areas of sinkholes, all of which emphasized the propriety of residential development on tracts such as Mayfred.

Harold Wise, another planning expert, and Mr. Rohrbach stated they would have recommended that the Mayfred tract be zoned for 7,500 square feet lots in considering the new zoning ordinance.

James Appel, real estate analyst, and three subdivision developers, Milton Duenke, Edward H. Givens, and respondent Alfred Mayer, stated the greatest demand and need in the area north of Interstate 270 was for homes on lots of 7,500 to 10,000 square feet which could be sold for $17,500 to $20,000. Mr. Appel valued the tract at $1,500 per acre zoned nonurban and at $4,500 per acre zoned R–4.

There was evidence that Hazelwood School District favored the concept of nonurban zoning; however, that party neither pleaded nor showed that it was unable to accommodate additional enrollment, and its problems are no different from other school districts experiencing the population growth of St. Louis County.

There also was evidence of the St. Louis County Police Department deployment in the unincorporated areas of St. Louis County and, as in the situation of the schools, its services would need necessarily to be expanded to meet growing population demands wherever they occur.

Plaintiffs emphasized the recommendation of the Planning Commission that the Mayfred tract be zoned nonurban. In addition, individual plaintiffs and others described the land surrounding the Mayfred tract as farms and rural in character. Others described the increase of traffic on the roads providing access to the Mayfred tract.

Hermann Wagner, St. Louis County Planning Director, opposed zoning of Mayfred to any classification other than nonurban. He defined "urban sprawl" as "that condition which exists when you get a scatteration of small urban developments over a large area," and, in his opinion, development of Mayfred in 7,500 square feet lots would trend to urban sprawl. His opinion was that Mayfred was not properly zoned R–4 and would be better zoned nonurban.

Samuel Dardick, another planning consultant, defined "urban sprawl" as a scattered development separated from continuous urban development by vacant land areas either not used productively or sometimes used for agriculture. He stated that urban sprawl was characterized by excessive costs to the community as a whole in terms of public services and utilities. His opinion was that R–4 zoning of Mayfred constituted urban sprawl, and that Mayfred should have been zoned nonurban.

In addition to matters previously mentioned, Mr. Rohrbach was of the opinion that Mayfred would not properly be zoned nonurban because it did not fall within the definitive tests for that classification such as unusual topography, unusual geological conditions, unusual strain on public facilities, inaccessibility of roads, and existence of significant nonurban uses. He did not consider existing agriculture in a developing area as significant nonurban use. In his opinion, Mayfred should have been and was properly zoned for medium density residential use, i. e., a density range between 5,000 and 10,000 square feet. (R–4 provides for 7,500 square feet.) Mr. Rohrbach's definition of "urban sprawl" was the continual accretion of subdivisions strung end on end to create an environment of similarity or of average without any focal point in the community. He felt there was no need for Mayfred development to fall into this pattern and in his view of two proposed plans of development of Mayfred would avoid the fault. He distinguished the Mayfred tract from contiguous

areas zoned nonurban. Their topography is the same but Mayfred differs in lying on New Halls Ferry Road and is part of the outward thrust of urban development. He felt that some of the areas contiguous to Mayfred also should be zoned for medium density residential because they, too, enjoy the availability of public services and utilities.

Additional testimony from Mr. Wise reflected a view similar to Mr. Rohrbach's on "urban sprawl." He did not think the terms necessarily referred to gaps between urban developments, and he felt urban sprawl would be avoided under Mayfred's plans. In his opinion, Mayfred was not nonurban because the nonurban criteria do not fit the tract. According to him, Mayfred should be zoned for development at a density of one residence per 7,500 square feet of lot space. Characteristics supporting his opinion of such proper zoning on Mayfred were its adjacency to developed areas, its utility services, and urban extension. The tract was ripe for development and problems of roads, schools, fire and police services do not have to be solved prior to zoning a tract for development.

Mr. Wagner and Mr. Dardick, plaintiffs' experts, admitted, and Mr. Rohrbach and Mr. Wise, defendants' experts, testified, that the Mayfred tract did not have rough natural topography or any unusual geological conditions that characterize nonurban lands which would create practical difficulties in providing utilities, roads, and other public services for the residential development of the tract.

There was no evidence that R–4 zoning of the Mayfred tract would have any adverse effect on properties owned by appellants.

Recalling that this is but one property of 350 acres zoned along with some 208,000 total acres in a comprehensive zoning ordinance, this factual situation demonstrates the existence of conflicting evidence or conflicting inferences on the issue of the appropriate zoning of the Mayfred tract in relation to the rest of St. Louis County, particularly north St. Louis County. The conflict in testimony of experts Wagner and Dardick in support of plaintiffs' view on the one side, with the testimony of experts Rohrbach and Wise in defense of the Council's action on the other, is, in itself, vividly demonstrative of the "fairly debatable" nature of the present issue. Under such evidence and circumstances, plaintiffs failed in their burden of proving the Council's action unreasonable, capricious or discriminatory, and in resolving the conflict thus existing the Council performed the very function enjoined upon it. City of Monett v. Buchanan, supra, 411 S.W. 2d 1. c. 114–115 [7–9]; Flora Realty Co. v. City of Ladue, supra, 362 Mo. 1025, 246 S.W.2d 1. c. 779 [9].

These circumstances likewise defeat appellants' charge of "spot zoning" defined in 1 Rathkopf, The Law of Zoning and Planning, p. 26–1, as "the practice whereby a single lot or area is granted privileges which are not granted or extended to other land in the vicinity in the same use district." That author provides the answer here when he continued: " 'Spot zoning' may exist * * * in relation to an original zoning ordinance but in such case, while the term 'spot zoning' may be used, the contention would ordinarily be that 'piecemeal zoning' is involved or that the zoning plan, if not 'piecemeal,' is arbitrary, capricious or discriminatory with respect to the particular property involved. It is in connection with the amendment of an existing ordinance and a change of use classification of a single parcel in, or area of, the municipality (or county) that the question of 'spot zoning' most often arises."

Wippler v. Hohn, 341 Mo. 780, 110 S.W. 2d 409, Numer v. Kansas City, Mo.App., 365 S.W.2d 753, and Keppy v. Ehlers, 253 Iowa 1021, 115 N.W.2d 198, cited by appellants, are not in point because they did not involve original comprehensive zoning ordinances but, instead, dealt with amendments to existing ordinances. Such

amendments actually singled out single, or a small group of properties within a larger district for special treatment by way of changed zoning such as reclassifying two lots for commercial in a multiple-dwelling district (Wippler v. Hohn); rezoning single lot for gasoline filling station in boulevard residential section (Numer v. Kansas City); reclassifying 20-acre tract for industrial uses in whole township which, with few exceptions was restricted to agricultural uses (Keppy v. Ehlers).

In contrast to those circumstances, this case presents a clear case of zoning of a 350-acre tract in conformity with a comprehensive plan for the entire unincorporated area of a county.

Appellants argue also that the R–4 classification on the Mayfred tract, which enhances its value 3-fold, has nothing to do with public interest or general welfare. It is true, of course, that while this enhancement of value "is by no means decisive * * *, it is certainly an element to be considered, particularly in ascertaining the relationship of the zoning to the public welfare." Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833, 840 [3].

Finally, appellants complain of an abuse of discretion of the trial court in denying their request upon motion for new trial to reopen their case under Civil Rule 78.01 V.A.M.R., to show the "15,000 square foot density" recommended by the Planning Commission for those tracts adjacent to Mayfred after the Supreme Court decision which overturned annexation of such adjacent area to the City of Florissant. The argument is that "this evidence, had it been heard, might have led the trial court to reach a different conclusion concerning the validity of the zoning granted to the Mayfred Tract."

■ The grant of a new trial on the basis of newly discovered evidence or reopening a court-tried case for additional evidence under Civil Rule 78.01 "is not favored and rests largely in the sound discretion of the trial court. Absent a clear abuse of that discretion the reviewing court will not interfere." Deacon v. City of Ladue, Mo.App., 294 S.W.2d 616, 626 [13].

■ The "new evidence" suggested by this point came into existence some eighteen months after April 8, 1965, the date upon which the St. Louis County Council enacted Ordinance 3552. It was not a matter in existence when the Council considered its action and thus could not have been a factor bearing upon the issue before the Council. Had the timing been otherwise, the proffered evidence was that the Planning Commission was recommending 15,000 square feet lots for single-family dwellings for properties south of Mayfred between Mayfred and Florissant. This is not wholly inconsistent with 7,500 square feet lots in Mayfred and even represents a change in view of the Planning Commission which previously had recommended nonurban classification in the area. Such evidence would not remove the "reasonably doubtful" or "fairly debatable" nature of the issue resolved by the County Council, and refusal of such does not convict the court of an abuse of discretion. Griffin v. Anderson, Mo.App., 369 S.W.2d 889, 893[11, 12].

For the reasons indicated the judgment is affirmed.

HOUSER, C., not sitting.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEILER and STORCKMAN, JJ., and HOLMAN, Alternate Judge, concur.

HENLEY, P. J., not sitting.