MILLER LAND COMPANY, a corporation, and Richard Caldwell, Respondents,

v.

LIBERTY TOWNSHIP, a corporation, et al., Appellants.

No. 56671.

Supreme Court of Missouri, Court en Banc.

June 24, 1974.

Briney, Welborn & Spain, Bloomfield, for plaintiffs-respondents.

Powell, Ringer & Baker, Dexter, for defendants-appellants.

FRED E. SCHOENLAUB, Special Judge.

In this action for a mandatory injunction the defendants were ordered to remove a drainage tile they had installed through an abandoned railroad bed, to refill the railroad bed and to restore it to its natural height and condition. Their Motion to Set Aside Judgment, for New Trial, to Take Additional Testimony, and to Amend Findings and Judgment was overruled and they appeal.

Plaintiff-Respondent, Miller Land Company, is the owner of approximately nine hundred fifteen acres of land in Liberty Township, Stoddard County, Missouri, five hundred acres of which is farmed by plaintiff-respondent, Richard Caldwell. The east ninety-seven acres of this land is bounded on the east by the abandoned railroad bed which separates it from the southeast portion of a two hundred twenty-three acre farm owned by Keith Minton. A county road maintained by Liberty Township and referred to throughout the trial as the half-section line road runs along the south line of the ninety-seven acre Miller tract and the Minton land. A farm owned by Ralph Steakley borders the half-section line road on the south.

This controversy involves changes made by appellants in the drainage of surface water from the Minton land into a ditch on the north side of the half-section line road. Prior to August 1968, all of the surface water draining south from the Minton land was collected in the ditch and then carried south under the road through a thirty-inch concrete tile approximately half way between the railroad bed and State Highway ZZ to the east, and through a twelve-inch clay tile under the road approximately eighteen feet east of the railroad bed. The water then continued south in a ditch through the Steakley farm.

Steakley had earlier built a field road immediately south of and parallel to the half-section line road. He placed an eighteen-inch culvert, referred to throughout the trial as a "horn", under the field road in line with the thirty-inch tile and the ditch through his field to the south. He later installed a trap in the horn by which he could control the flow of water into the ditch through his farm. The field road, with the trap closed, caused water to back up between it and the half-section line road and beyond that into the ditch on the north side of the half-section line road. In August of 1968, to further protect his land against surface water from the north, Steakley prevailed upon the township board to make a cut through the abandoned railroad bed connecting the ditches on the east and west thereof. Steakley and Earl Gaines, a member of the township board, contacted Ben H. Vaughn, manager of the Miller Land Company, who agreed to the cut after he was assured they would stop when he thought the cut was deep enough and that they would fill the cut if he got too much water. The cut was made by Dayton Forkhum, a grader operator for Liberty Township, with Gaines, Vaughn, Caldwell, and Steakley present. When the railroad bed had been cut approx-

imately half way down from the top Vaughn had Forkhum stop. Forkhum then cleaned the ditch east and west of the railroad bed, lowering the ditch to the east six to eight inches. After high water during the spring of 1969 cut the railroad bed to the level of the bottom of the ditch, Vaughn asked that it be filled. A load of gravel was dumped into it, but later removed, restoring the cut to the approximate level of the first cut. A twenty-four inch horn was then installed at this level, but approximately two weeks later the bed was again cut, this time to the bottom of the ditch. The horn was then placed in the bottom of the cut, three inches lower than the thirty-inch tile runing under the road to the south.

At the same time the horn was installed through the railroad bed an additional horn was placed under the half-section line road at a point one-half mile west of the railroad bed where the road turns south between the Miller and Steakley farms. This horn connected with a north-south ditch on the east or Steakley side of the road which continued on south to a drainage ditch. This horn was removed a few weeks later, forcing the surface water into a ditch on the west or Miller side of the road. This ditch dead ends at a levee on the south side of the Miller farm, forcing the water carried by it to spread out onto the Miller land.

■ Although appellants contend that their action was taken to protect the half-section line road after Steakley installed the trap on the horn under his field road, there was sufficient evidence from which the trial court could find that the road was not being threatened and that the purpose of their action was to divert surface water from the Steakley land to the Miller land. For over thirty-five years the water had drained under the road and into the ditch through the Steakley property. Although Minton failed in an action to obtain injunctive relief from the situation created by Steakley, his failure was due to a lack of proof that the drainage of his land was being unreasonably interfered with. See

Minton v. Steakley, 466 S.W.2d 441 (Mo. App.1971). No action was taken by Liberty Township against Steakley to remedy any threatened danger to the road. Instead, and at the request of Steakley, the railroad bed was cut and the water diverted to the Miller property.

Citing Sections 229.030 and 231.210, RSMo 1969, V.A.M.S., appellants first contend that installation of the culvert through the railroad bed was necessary to protect the half-section line road, a valid exercise of the township's governmental functions, and is not controllable by injunction. Section 229.030, RSMo 1969, V.A.M.S., provides for the construction of bridges and culverts on public roads and Section 231.210 provides for their maintenance and repair. Appellants also rely on Barth v. Clay Township, 354 Mo. 90, 188 S.W.2d 660, 662 (1945), and McMurry v. Kansas City, 283 Mo. 479, 223 S.W. 615, 619 (banc 1920), holding that discretionary acts of township boards are not subject to review unless they are affirmatively shown to have been exercised arbitrarily, fraudulently or oppressively.

■ In this case the transcript fails to reveal any evidence in support of appellants' contention that installation of the horn under the railroad bed was necessary to protect their road. There was no evidence of any washing of the road as alleged by defendants, or of any instance when water covered even a part of the road prior to installation of the horn. The evidence did establish, however, that the horn was installed to protect the Steakley land against surface waters draining from the Minton land. Such action by the township board was not a proper exercise of the township's governmental functions, shielding it from review by the courts and control by injunction.

■ Appellants also contend that the cut made in the railroad bed and installation of the culvert were not unlawfully done and that the court, therefore, erred in granting its mandatory injunction. In

Haferkamp v. City of Rock Hill, 316 S.W. 2d 620 (Mo.1958), this court, while recognizing that Missouri has long been committed to the doctrine that surface water is a "common enemy" and that the owner of a dominant estate may direct it upon a servient estate, held that the rights given under this doctrine must be exercised within reasonable limits, and that a possessor of land is not privileged to discharge large quantities of surface water by artificial means in a concentrated flow otherwise than through natural drainways. At pages 625–626 it was further held that " * * * a landowner in the reasonable use and development of his land may drain it by building thereon sewers, gutters and such other artificial water channels for the purpose of carrying off the surface waters into a 'natural surface-water channel' . . . located on his property without liability to the owner of neighboring land, even though such method of ridding his property of surface water accelerates and increases the flow thereof, provided that he acts without negligence, and provided further that *he does not exceed the natural capacity of the drainway to the damage of neighboring property.*" (Emphasis added.)

■ Prior to the cut in the railroad bed, surface water from the Minton land was carried in the half-section line road ditch to the thirty-inch tile, where it then flowed south in the ditch through the Steakley farm to Lateral Ditch 12. Construction of the Steakley field road, and installation of the trap in the eighteen-inch horn under it, backed the water into the half-section line road ditch east of the railroad bed. When the railroad bed was cut, joining the two east-west ditches, the water was then forced into the ditch on the Miller land. Addition of the water through the railroad bed to the water already draining through this area resulted in water standing on the Miller tract ten days to two weeks longer than it had before the water was so diverted to the damage of respondents.

■ Appellants also allege abuse of discretion of the trial court in denying their request to reopen the case after judgment and permit them to introduce additional evidence. Civil Rule 78.01, V.A.M.R. vests trial courts with discretion to open the judgment in a court-tried case, take additional testimony, amend findings of fact or make new findings, and direct entry of a new judgment. Such action, however, is not favored and rests largely in the sound discretion of the trial Court. Absent a clear abuse of that discretion, the reviewing court will not interfere. Desloge v. County of St. Louis, 431 S.W.2d 126, 135 (Mo.1968).

■ The additional testimony which defendants sought to introduce was set forth in an affidavit of appellants Jennings, Sandusky and Jackson attached to the Motion to Set Aside the Judgment, and was to the effect that the tile under the half-section line road eighteen feet east of the railroad bed was replaced on August 27, 1970, with a twenty-four inch steel culvert, the bottom of which was at the level of the bottom of the ditch and ten inches lower than the culvert through the railroad bed. The date on which this change was made was three and one-half months after trial, but some three months prior to the filing of defendant's Proposed Findings of Fact and Conclusions of Law, and four and one-half months prior to the last date on which the trial judge viewed the area before entry of judgment on January 18, 1971. Conditions in the area after this change was made were observed by the trial judge and additional evidence on this point would have been merely cumulative. The trial court's refusal to reopen the case cannot be considered an abuse of discretion.

The judgment is affirmed.

PER CURIAM.

Division Two Opinion by SCHOENLAUB, Special Judge, adopted as the opinion of the Court en Banc.

DONNELLY, C. J., and SEILER, HOLMAN, BARDGETT, HENLEY, and FINCH, JJ., concur.

MORGAN, J., dissents in separate dissenting opinion filed.

MORGAN, Judge (dissenting).

I respectfully dissent because of my belief that defendants' action was consistent with the law of this state under the "common enemy doctrine" pertaining to surface water.

Recently, the Kansas City District of the Court of Appeals had occasion to consider the subject in Camden Special Road District of Ray County v. Taylor, 495 S.W.2d 93 (Mo.App.1973). The Court, therein, reviewed the doctrine from its inception and clearly articulated the scope thereof. For instance, l.c. 98 [2, 3] : "Haferkamp v. City of Rock Hill, 316 S.W.2d 620 (Mo. 1958) and Reutner v. Vouga, 367 S.W.2d 34 (Mo.App.1963), as well as the cited cases chronologically tracing Missouri's judicial history of the 'common enemy doctrine', support the undisputable conclusion that the proviso attached to guarding against or diverting surface water, that one 'exercises reasonable care and prudence' in doing so (Abbott, supra), [Abbott v. K.C., St. J. & C.B. Ry. Co., 83 Mo. 271 (1884)], does not, in any way, modify or limit the basic and inherent right constituting the heart and core of the 'common enemy doctrine' that a landowner may ward off surface water even though in doing so he damages his neighbor. The proviso, that one 'exercises reasonable care and prudence' in doing so (Abbott, supra), lends itself solely to and prohibits unnecessarily collecting and discharging surface water to the damage of an adjoining owner. Unyielding to semantic aphasia, the referred to proviso does not limit or modify the 'common enemy doctrine' prevailing in Missouri with respect to surface water, but rather it enunciates a unique and limited factual situation to which the 'common enemy doctrine' has no application."

For plaintiffs to prevail under the existing law, a showing had to be made that defendants unnecessarily "collected" and "discharged" water on the servient estate. To do the latter, it was necessary to have done the former. I find nothing in the record that defendants "collected" water either necessarily or unnecessarily. That being true, judgment should be for defendants.