Roy **MEINECKE** and Margaret Meinecke, Plaintiffs-Appellants,

v.

Elwood **STALLSWORTH** and Nina Stallsworth, Defendants-Respondents.

No. 25593.

Missouri Court of Appeals, Kansas City District.

June 5, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 6, 1972.

Application to Transfer Denied Sept. 11, 1972.

R. H. Moore, Kansas City, for plaintiffs-appellants.

R. E. Moulthrop, Bethany, for defendants-respondents.

PER CURIAM.

The plaintiffs filed a petition denominated "Petition in Equity for Damages", in two counts. The nature of each of these counts was determined by court and counsel in pretrial proceedings to be that Count I is an action for damages for the maintenance of a private nuisance; and that Count II is an action for injunctive relief, seeking to abate such private nuisance. The case was tried upon these theories of recovery before the court without a jury.

At the close of plaintiffs' evidence, the court sustained an oral motion to dismiss Count I of plaintiffs' petition and proceeded with the trial of the issues on Count II. At the close of all the evidence, neither side made any request for findings of fact or conclusions of law, and the court entered a judgment in favor of the defendants and against the plaintiffs on Count II of the petition. The trial court dictated into the record his reasons for his actions as to both Count I and Count II.

As to Count I, the trial court based its initial dismissal order upon the ground that no money damages had been proved. But at the close of all the evidence, he ruled that there was a failure of proof on both Counts I and II sufficient to establish that the defendants had in fact maintained a private nuisance.

It is from these judgments of the trial court that this appeal is taken. The parties hereto will be referred to here as "plaintiffs" and "defendants".

This trial began on Wednesday, July 8, 1970. On the preceding Monday, July 6, 1970, the defendants had filed an amended answer with the clerk of the court and apparently had mailed a copy thereof to counsel for the plaintiffs at his office in Kansas City, Missouri, which copy was not received by counsel until Thursday, July 9, the day after the conclusion of the trial. At the opening of the trial, the following colloquy appears in the transcript:

> "MR. MOULTHROP: * * * I would like for the record to show, Judge, leave granted to file amended answer, copy of which I have furnished Mr. Moore.
>
> THE COURT: Leave is so granted and it is ordered filed.
>
> All right, Mr. Moore, you may proceed by perhaps a somewhat brief opening statement.
>
> MR. MOORE: Yes."

The record is not clear as to whether or not counsel for the plaintiffs actually received a copy of the amended answer at the start of the trial in Harrison County. There is at least an inference in the post trial motions and in the briefs here that counsel did not see the answer until he returned to his office in Kansas City on Thursday, July 9, 1970.

We do not undertake to decide this however, since, of course, counsel would be furnished a copy thereof upon request of counsel or the court. The amended answer became and was a part of the court file at the beginning of the trial and was available to plaintiffs' counsel along with all other court papers.

Following the trial of this cause with the results above noted, plaintiffs filed their motion for a new trial, or in the alternative, to amend the judgment and opinion. The only part of this motion which complies with the rules as to specificity pertains to the error charged with reference to the filing and service of defendants' amended answer.

■ Therefore, we are faced at the outset with the plaintiffs' claim that the trial court erred in granting leave to defendants to file an amended answer on the morning of the trial. Since the case was for trial and had long been at issue, leave of court was required (in the absence of written consent of the plaintiffs) but such leave to amend should be "freely given when justice so requires". Section 509.490 RSMo, V.A.M.S.; Rule 55.53, Rules of Civil Procedure, V.A.M.R.; Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360.

A close comparison of the amended answer with the original answer shows that basically, the amendments consist of a long account of allegations of personal misconduct on the part of the plaintiff, Roy Meinecke, most of which do not have any apparent bearing on the real issues before the court. Some evidence on these extraneous matters was improperly admitted by the trial court over plaintiffs' objections, but the trial court indicated in his statement of the reasons for his decision that such evidence did not form any basis for the result reached, but rather, the trial court ruled the case upon the sole ground above noted. It may be assumed that he disregarded such evidence, and in arriving at our independent conclusions, we will certainly do so.

■ Upon the filing of this amended answer, the plaintiffs were not required to file a reply. Section 509.010 RSMo; Rule

55.01, Rules of Civil Procedure; Hillhouse v. City of Aurora, Mo.App., 316 S.W.2d 883, 890. However, they may have sought leave of court to reply and time in which to do so. Other avenues of action were obviously open to them under the circumstances, namely, objection to the filing of such amendment, motions directed to the new allegations of the amended answer, or application for a trial continuance. But as shown from the above excerpted colloquy at the start of the trial, they resorted to none of these, but stood mute and proceeded to trial. Thus, they waived any alleged error incident to the leave to file the amended answer.

In the case of Browder v. Milla, Mo.App., 296 S.W.2d 502, the rule was thus stated, l.c. 508:

" * * Plaintiff contends the trial court erred in permitting defendant to file Count IV for the first time on the morning the trial of the case was to commence. However, so far as the record discloses, plaintiff did not claim surprise or request a continuance in order to prepare a defense to the count, but only generally objected to such filing. Under these circumstances it was discretionary with the trial judge as to whether or not to permit the amended counterclaim containing Count IV. We find no abuse of that discretion * * "

■ The courts have universally held that under our statutes and rules, the granting of permission to amend pleadings is discretionary with the trial court and his judgment in that regard is not to be criticized unless there is a clear abuse of such discretion. Hamilton v. Slover, Mo., 440 S.W.2d 947, 954; Stewart v. Stewart, Mo.App., 277 S.W.2d 322, 325, 326; Lee v. W. E. Fuetterer Battery & Supplies Co., 323 Mo. 1204, 23 S.W.2d 45; Dyer v. Harper, 336 Mo. 52, 77 S.W.2d 106.

In Pilkington v. Pilkington, 230 Mo.App. 569, 93 S.W.2d 1068, this court said, l.c. 1071:

"It is the established rule that an objection to the filing of an amended petition should be made when leave to file the same is asked or granted and that, in order to avail himself of error in the filing of an amended petition by the plaintiff, the defendant should stand on the rule. He waives the objection by answering such amended petition or going to trial thereon."

Moore v. Parks, Mo., 458 S.W.2d 344; Osborn v. McBride, Mo., 400 S.W.2d 185, 188, 189.

The plaintiffs claim in their after-trial motions below (although such claim was not asserted at the trial) that the filing of the amended answer on the morning of the trial was such a "surprise" to them that they should have been granted a new trial under the terms and provisions of Rule 78.01, Civil Rules of Procedure, which provides in part:

" * * * the court may award a new trial of any issue upon good cause shown and in any case where there has been * * surprise of a party or his attorney * * "

The term "surprise" as used in this rule has been defined in Hamm v. Hamm, Mo.App., 437 S.W.2d 449 at l.c. 453, as follows:

" 'Surprise,' as used in relation to the granting of a new trial or in applying for equitable relief against judgments, refers to 'such unforeseen events, misfortunes, losses, acts or omissions, *as are not the result of any negligence or misconduct in the party*' * * * or 'an unforeseen disappointment in some reasonable expectation *against which ordinary prudence would not have afforded protection.*' * * * " (Emphasis the court's in Hamm)

■ If a litigant is surprised by something that occurs during the trial, he cannot sit mutely by, but must call the court's attention to the fact when it occurs and seek relief or corrective action then. Keyte

v. Parrish, Mo.App., 399 S.W.2d 601, 605; Tuttle v. Tomasino, Mo., 336 S.W.2d 683, 689.

We hold that the court below did not abuse its discretion in granting leave for the defendants to file their amended answer on the morning of the trial and that by failing to object or seek other relief, the plaintiffs are now precluded from asserting this action as error.

We have carefully reviewed the transcript of testimony to determine whether or not there was sufficient competent evidence favorable to the plaintiffs to establish a cause of action for damages and injunctive relief upon the theory that the defendants maintained a private nuisance so as to interfere with the property or personal rights of the plaintiffs. We have reached the conclusion that the evidence does not rise to the dignity of such proof.

■ Before reviewing the evidence, certain general principles regarding this type of action must be kept in mind. At common law, a "nuisance" is a wrong arising from an unreasonable or unlawful use of property to the discomfort, annoyance, inconvenience or damage of another, and usually comprehends continuous or recurrent acts. Some of these occurrences fall within the classification of unlawful nuisances or nuisances per se. Others cannot be so categorized, but depend upon proof of particular facts or circumstances which make the acts or conditions a nuisance.

■ We are not here confronted with a case involving a nuisance per se.

In the case of Kays v. City of Versailles, 224 Mo.App. 178, 22 S.W.2d 182, the plaintiff filed a suit to enjoin the enforcement of a city ordinance which provided that no swine could be kept within the city limits from April 1 to October 15. The Legislature had empowered cities of the fourth class to enact ordinances with reference to the regulation of livestock, including hogs and swine, and ordinances to prevent nuisances and their abatement. The evidence showed that the plaintiff was in fact maintaining twenty-three pigs and six sows on a four and a half acre tract of land within the city limits. The court enjoined the city from the enforcement of this ordinance and in so doing declared, l.c. 183:

"* * But the Legislature has never empowered cities of this class to prohibit the keeping of animals within the city when such keeping does not constitute a nuisance per se. Brown v. Carrollton, 122 Mo.App. 276, 281, 99 S.W. 37. 'A nuisance at law or a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surrounding' * * *

* * * * * *

As the keeping of hogs is not a nuisance per se the ordinance of the City of Versailles attempting to prohibit their keeping anywhere within the city is void. * * "

It should again be pointed out that we are not concerned with the interpretation of any ordinance of the city of Cainsville. The ruling in the Kays case, controlling here, specifically holds that, even in the face of an ordinance, the keeping of swine within the city limits does not constitute nuisance per se and if such keeping is to be denominated a nuisance, substantial proof is necessary. In the case of City of Fredericktown v. Osborn, Mo.App., 429 S.W.2d 17, the court enjoined the maintenance of a commercial dog kennel maintained in the middle of a residential section. Convincing evidence was offered concerning the noise, odors and other inconveniences created by the maintenance of said kennel. The court held, however, that the situation created by the kennel was not a nuisance per se, but did constitute a private nuisance under the evidence, and said, l.c. 22:

"* * It is obvious that the use of property in one locality and under some circumstances may be reasonable, while such use in another locality and under

other circumstances would be unreasonable and constitute a nuisance. Necessarily, therefore, whether a particular use is or is not a nuisance must be determined from the facts in each case, such as the locality, character of the neighborhood, nature of the use, extent and frequency of the injury, the effect upon the enjoyment of life, health, and property of those affected, and the like."

To like effect, is the case of Schott v. Appleton Brewery Co., Mo.App., 205 S.W. 2d 917.

The plaintiffs owned their home in Cainsville, Missouri, which they had acquired in 1951. This residence was separated from a five acre tract of land owned by the defendants by a gravel road. The plaintiffs testified that in 1966, the defendants had fenced their property along the road and for a year or two had kept cattle on the five acre tract. Thereafter, the defendants kept swine on their property, and in connection therewith constructed some hog houses along the fence line about ninety-four feet from plaintiffs' home.

Plaintiff Roy Meinecke testified about the noise of the swine "squealing and squalling", blowing dust, rats in the area, and bad odors, but was not definite as to time or incidents. He had requested the defendants to move the hogs, but without results. He complained about the situation to the State Division of Health and an inspection was made by that department on June 2, 1969 by one Richard F. Jenkins, Sanitarian, who under date of July 21, 1969 wrote the plaintiff that the Stallsworth's lot presented a health and odor nuisance and that "rats, debris and large amounts of wet corn" were present at the time. He also advised the plaintiff that "legal authority to abate such nuisance is vested in the local government". This letter was offered and admitted into evidence without objection.

Mr. Jenkins testified as a witness for the plaintiffs on July 8, 1970, and he testified that on the date of his inspection, June 2, 1969, the Stallsworths' hog lot was "a rea-sonably clean feed lot". He was not examined about the content of his letter of July 21, 1969.

The plaintiff, Roy Meinecke, testified that in the area of his home, there are a number of hog lots other than the Stallsworth property.

The plaintiff, Margaret Meinecke, testified that the defendants' hog houses were ugly; that the odor was unpleasant; that dust blew over to plaintiffs' property; that upon occasions the hogs' squealing disturbed her sleep, and that she has seen rats on the premises.

Orley Banks, who lives across the road from the plaintiffs, said there was "a lot of squealing" from defendants' hogs.

George Francis, the son-in-law of the plaintiffs, testified that upon one occasion after a rain in hot weather, the odor was bad and, on one other occasion, he noticed dust blowing.

C. D. Burdette, whose mother lives on property adjacent to the defendants' hog lot, testified that "last summer" on a number of occasions in wet weather, he noticed a foul odor from defendants' hog lot. This witness raises hogs, and with candor and perception stated: "Any hog lot stinks regardless of how well kept it is."

Noel and Margaret McLain, who live in the area, testified that they noticed bad odors from the defendants' hog lot. There were a number of other hog lots in the neighborhood, and Mr. McLain stated the well known truism, "any hog house will stink".

At this point in the trial, the plaintiffs rested their case and, in our view, the trial court would have been justified at that point to enter a judgment for the defendants. Plaintiffs had not proved the ownership or control of the five acre tract or of the swine, to be in the defendants; an unreasonable use of the property considering the "locality and character of the neighborhood"; the extent, or frequency of injury, or any damage.

The matter of ownership and control, however, was conceded by the defendant Elwood Stallsworth in his testimony. He also testified that the maximum number of hogs he had ever kept on the place was 28–29, of which 17–18 would be "adults". He testified that many people in the neighborhood, including the plaintiffs' daughter and son-in-law, kept swine, and he identified pictures of tracts where swine were kept by others. At the time of trial, he had 10 big hogs and 16 little pigs on the place.

His place was five acres in size. It has gravel roads on three sides. There is a little dusty area around the hog houses. He has lived in the area about 49 years. Swine were kept on his tract in 1951, when plaintiffs moved in.

Mrs. Vernell See lives 30 feet from defendants' hog lot and has been there three years. She is not bothered by odor except once or twice the preceding summer during wet weather. Defendants' hogs are not noisy, there is no dust problem, and they are no problem or nuisance to her.

Another neighbor of defendants, Sharon Hamilton, lives next to defendants' lot and testified she was not bothered by odors, noise or debris.

The city officials of Cainsville testified there was no city ordinance prohibiting the keeping of swine; that many people in the city keep swine, and that the plaintiffs had never made any formal complaint about defendants' swine to city officials. Max Ross, the city clerk, was familiar with defendants' property. He stated that he kept swine and that all hog lots in Cainsville are about the same. The Stallsworth property was reasonably clean. Other witnesses testified to like effect.

Walter Stallsworth, the defendant Elwood Stallsworth's brother, testified he lived on a five acre tract right next to the defendants; that he had kept swine there for 47 years; that he had helped the defendant clean the lot, and that it was a normally kept lot.

We conclude that the evidence in this case fails to establish a right in plaintiffs to invoke the harsh remedy of injunction to abate a private nuisance. Although there was some conflict in the evidence as to odors and noise, such annoyances would appear not to be substantial and were undoubtedly part of the general atmosphere of the area. The trial court was in a better position to judge the credibility of the witnesses, but we reach our conclusion independently upon the record before us and the applicable law relating to private nuisances.

What we have said here and the result reached of course has only retrospective and not prospective application to the neighborhood situation in which the parties find themselves.

The judgment is affirmed.