**N. C. BLYDENBURGH and Nova Blydenburgh, Respondents,**

v.

**Kenneth R. AMELUNG and Mrs. Kenneth R. Amelung, Appellants.**

No. 22701.

Kansas City Court of Appeals.

Missouri.

Jan. 6, 1958.

Robert E. Coleberd, Liberty, Dean F. Arnold, Kansas City, for appellants.

Williams & Norton, North Kansas City, for respondents.

BROADDUS, Presiding Judge.

Plaintiffs, husband and wife, brought this action against defendants, husband and wife, to recover damages alleged to have been caused to their property by defendants artificially impounding and discharging water onto plaintiffs' property. Trial before the Court and jury resulted in a verdict for plaintiffs for $1,900. Defendants have appealed.

The parties to this litigation are neighboring property owners. Plaintiffs are the owners of a lot which has a frontage on Troost, a north and south street in Kansas City North, Missouri, of 80 feet, and is 210 feet deep. Defendants own two lots which front on Tracy, a north and south street; the first street east of Troost. The rear of defendants' south lot adjoins the rear of plaintiffs' lot. The lots of defendants are approximately 15 feet higher in elevation than plaintiffs' lot. Defendants' lots slope from Tracy to the west towards Troost. The west half of defendants' lots is approximately the same level as the east half of plaintiffs' lot. Tracy beginning at a point south of defendants' property slopes north to the north line of defendants' property. Tracy North slopes south to this point where there is a culvert under the street. Surface water from the land on the east side of Tracy flows into a ditch along the east side of Tracy, and then through this culvert and onto defendants' property where it is gathered in a saucer or basin in the northeast corner of defendants' property and from there flowed southwesterly in a ditch sixteen inches deep and approximately sixteen inches wide across the north side of defendants' property in a southwesterly direction where it spread out and flowed onto plaintiffs' property.

Plaintiffs started construction of their house in the fall of 1954 and completed and moved into it in March 1955. In June of 1955, defendants laid an 8-inch tile from the saucer-like depression in a southwesterly direction to a point approximately 20 to 25 feet east and 20 to 25 feet north of the northeast corner of plaintiffs' lot, where the water was discharged through this tile onto the surface of the ground. Plaintiffs' evidence disclosed that during the first few

months they occupied their property they had no difficulty with surface water, but that after the tile was installed there was a vast increase in the amount of surface water on their property resulting in the washing out of plaintiffs' garden, the washing off of the sod on the terrace, the washing and eroding away of top soil and shrubbery, and causing cracks to appear in the foundation and basement floor of their home; that the total damage to their home was $3,000. It also appeared from plaintiffs' evidence that in June 1956, approximately a year after the tile was installed, it was plugged up, and thereafter plaintiffs experienced no more difficulty with excess water on their property, even though there was more rainfall in 1956 than in 1955.

After the appeal in this case was taken and before final submission thereof plaintiff N. C. Blydenburgh died, and it was ordered by this court that this cause should proceed in the name of Nova Blydenburgh only.

Defendants first contention is that "plaintiffs did not make a submissible case for the reasons: (1) Plaintiffs did not properly plead Section 54.11 of the Building Code of Kansas City by alleging with certainty the subject matter of this section of the code and the facts which constituted its violation, and for this reason failed to state a claim upon which any relief can be granted against defendants or either of them. (2) Plaintiffs did not allege in their petition nor prove that the alleged acts of defendants in violating this section of the Building Code of Kansas City were carelessly and negligently done by defendants. (3) Plaintiffs did not offer this section of the code in evidence which it is alleged defendants violated to cause their damage."

■ It is true, as defendants assert, that plaintiffs did not properly plead the Building Code of Kansas City, and did not offer the same in evidence. They proceeded, however, to try their case on the theory that the acts complained of on the part of the defendants constituted a nuisance in that the owner of a dominant estate cannot permit water to collect on his own premises and then discharge it in destructive quantities at one point in a body onto the servient estate. This is a well developed theory of law in Missouri as shown by the cases of Kiger v. Sanko, Mo.App., 1 S.W.2d 218, 221 and Clark v. City of Springfield, Mo.App., 241 S.W.2d 100, 106. An examination of paragraph 6 of plaintiffs' petition clearly reveals that sufficient facts were alleged to bring the case within the theory of the cases above cited. It was not necessary for plaintiffs to allege that the acts complained of were negligently done. As said by this court in the case of Casey v. Wrought Iron Bridge Co., 114 Mo.App. 47, 61, 89 S.W. 330, 334: "There is a marked distinction, though sometimes ignored, between causes of action based upon nuisance and those grounded in negligence. (Citing cases.) In the former class the fact of negligence is not an essential element * * *." To the same effect are the cases of Haynor v. Excelsior Springs Light, Power, Heat & Water Co., 129 Mo. App. 691, 108 S.W. 580, 582, and Kiger v. Sanko, supra, 1 S.W.2d loc. cit. 222. We rule the point against defendants.

■ Defendants second point relates to Instruction No. 1 given on behalf of plaintiffs. The first paragraph of the instruction informed the jury that under the law "surface water is a common enemy and property owners may deflect surface water off of their property, but they may not collect or impound the same on their property and then cast it on the adjoining property of others in increased and destructive quantities." Defendants say that "it omits an essential element, namely: 'to their damage', that is, damage to the party receiving the warded off water." The instruction adopts the language used by this court in the Kiger case, supra. Certainly the word "destructive" in common usage means to destroy, and we must assume that the jury would understand that if the water was cast upon the property in increased and *destructive* quantities that there

would, of course, be damage. In addition to this, the second paragraph of the instruction required a finding that plaintiffs' property had been *damaged* by the acts of defendants. It is a familiar rule that an instruction is to be considered as a whole. When thus construed it becomes apparent that there is no real merit in defendants' contention.

■ Defendants also assert that the required finding of the instruction that defendants "artificially impounded and collected surface water from their property and surrounding property" is not supported by the evidence. This contention also lacks merit. The testimony of Mr. Blydenburgh clearly shows that defendants obstructed the natural flow of the water on their vacant lot by making a fill along the eastern boundary of their property so as to create a ditch in order that water would flow to the north in the ditch to the northeast corner of the vacant lot, at which point the defendants curved the fill in such a manner as to create an artificial saucer-like depression to collect the water; that thereafter the defendants installed an 8 inch tile in the west side of this depression and conveyed the collected water across the entire length of their property in a southwesterly direction to a point near the northwest corner of plaintiffs' lot where the gushing stream of water was discharged. This testimony was corroborated by one of the defendants, Mrs. Amelung. The cases cited by defendants under this point announce correct statements of law, but are not applicable to the instant situation.

■ Defendants' last contention is that Instruction 2 which related to the measure of plaintiffs' damages was erroneous. The first portion of the instruction told the jury that in the event they found for plaintiffs under the other instructions of the court, they were to assess plaintiffs' damages at such sum as would reasonably compensate them for the injuries to their property as a result of the

casting of surface water on their land by the defendants. The instruction then went on to say "that in arriving at the reasonable damages sustained by the plaintiffs, if any, you will take into consideration the difference in reasonable value of plaintiffs' property before the damage, if any, and the reasonable market value after the damage was done, if any, *and you may consider the damage to the basement floor, foundation, garden, shrubs and sod,* if any, you so find, that directly resulted from the casting of surface water on plaintiffs' property, if you so find." Defendants say that that portion of the instruction which we have underlined "grafts onto the measure of damage rule applicable to real property cases, the consideration of additional specific elements," and thus "duplicates the amount of recovery." Strictly speaking, defendants are correct in their assertion, and we would be compelled to remand this case except for the following: There was no evidence offered as to the cost of repair of the basement floor or foundation, nor was there any evidence as to the cost of replacement of the garden, shrubs and sod. The evidence of plaintiffs as to damages was directed *solely* to the difference in the reasonable market value of their property as a whole. After testifying that the property had a market value of $17,000 before the flooding, Mr. Blydenburgh was asked: "What, in your opinion, was the reasonable market value of your property immediately after the cracks appeared in your foundation and basement floor, immediately after your garden, sod and shrubbery had been washed away? A. The market value in my opinion would have been $14,000." In view of the evidence, it is apparent that the intent of the instruction was to convey to the jury the thought that they could consider the damage to the basement floor, foundation, garden, shrubs and sod only for the purpose of arriving at the difference in the market value of the entire property. There is no claim made here that the verdict is excessive. And there is abundant authority in this state to the effect that

where the damages awarded are not excessive and fairly represent the damages shown by the evidence, an erroneous or inaccurate instruction upon the measure of damages will not constitute reversible error. Cases cited in Mo.Digest Vol. 3, part 2, ⊕1068(4) page 540.

Finding no error in the record prejudicial to defendants the judgment is affirmed.

All concur.