David F. LOONEY and Mildred D. Looney, his wife, Plaintiffs-Appellants,

v.

James C. HINDMAN and Betty M. Hindman, his wife, Defendants-Respondents.

No. 64078.

Supreme Court of Missouri, En Banc.

March 29, 1983.

As Modified on Denial of Rehearing April 26, 1983.

Ernest L. Keathley, Jr., St. Louis, for plaintiffs-appellants.

Stephen M. Glassman, William B. England, St. Louis, for defendants-respondents.

BLACKMAR, Judge.

The plaintiffs own a home in Bridgeton, St. Louis County. The defendants' home adjoins the plaintiffs' on the south. A fence along the south border of the plaintiffs' property separates it from the defendants', and a fence along the west border separates it from that of another neighbor, the Zimmers. The natural drainage in the area is from south to north and from west to east.

When the plaintiffs moved into their house in 1974 they hired a house mover to transport their 20 foot by 40 foot continuous pour steel reinforced concrete swimming pool to their new home, where it was installed in the back yard about three feet from the south fence. The pool rested on a concrete base and a sand and dirt bed and had a three foot walkway, or deck, around the edges.

During March and April of 1975 the defendants dug a 20 foot by 20 foot garden in their back yard, extending to the fence separating their property from the plaintiffs'. About March 14, 1977, defendant James Hindman roto-tilled the garden, and about March 23, manure was mixed into the soil of the garden. The evidence is not wholly in agreement as to just how close to the fence the garden was tilled, but the distance was no more than a few inches.

Some time in March of 1977 the plaintiffs emptied the pool for cleaning and painting, as they had done in past years without incident. Rains to a total of 3.25 inches fell during the night of March 27–28. The following morning the pool was seen to have risen three feet out of the ground, and the concrete deck around its edge was hanging off at a 30° angle. The pool was subsequently restored to approximately its former level, but only with great difficulty and expense. The rise of the pool out of the ground is the basis for the first claim which the plaintiffs submitted to the jury. (Count V of the petition).

Plaintiffs based this claim on the theory that the defendants rendered the garden area substantially more capable of absorbing water, by reason of the cultivation and manuring of the soil, so that it collected surface water, and, after the soil was saturated, discharged the water in increased quantities and with destructive force at a point onto plaintiffs' property underneath the base of the pool, causing the pool to "float." Plaintiff David Looney testified that, in attempting to find the source of the problem, he had observed water standing in the garden and found a hole, or channel, eight inches wide, leading from the defendants' garden to plaintiffs' pool. He also observed water running from the garden through this hole toward his pool. Plaintiffs produced an expert who corroborated these observations, and further postulated that the hole directed water that had collected in the garden toward plaintiffs' pool, with sufficient force to float the pool out of the ground.

Count VI, submitted to the jury, involved the rise of the pool in 1979. In 1977, some time after the pool had first risen, the defendants placed a border of railroad ties around the east, south and west sides of their garden "for decorative purposes." The ties were set in concrete, resting approximately one inch in the ground and two inches in the concrete. They were eight inches in height. Defendant acknowledged that one purpose of the setting in concrete was to divert water away from the garden.

The tie border presented no problem until April of 1979, when the pool was again empty. On April 11, following a heavy rain, the pool once more rose out of the ground. Defendants had not yet roto-tilled their garden for that season. The plaintiffs claim that this 1979 damage resulted when water on the west side of the defendants' garden was dammed by the tie border and forced onto plaintiffs' land. Plaintiffs' expert opined that this installation of ties could have diverted surface water that otherwise would have run off defendants' yard, but which instead would have been redirected toward the back fence and onto plaintiffs' property. The expert also testified

that increased hydrostatic pressure, caused by water running under the pool, forced this 1979 "floating" of the pool.

The plaintiffs sought to submit their claim for the 1977 damage by a verdict directing instruction reading as follows:

### INSTRUCTION NO. ——

Your verdict must be for Plaintiffs under Count V if you believe:

FIRST: Defendants collected or permitted water to collect on their own premises on or about March 27–28, 1977; and

SECOND: Said collected water was discharged in destructive quantities at one point in a body against Plaintiffs' land; and

THIRD: As a direct result of such collection and discharge of water, Plaintiffs sustained damage.

The court refused this instruction but, on its own initiative, gave an instruction based on MAI 22.06 and reading as follows: (Instruction # 3).

### INSTRUCTION NO. 3

Your verdict must be for plaintiffs under Count V if you believe:

FIRST: Plaintiffs owned the property at 11720 Chess Drive, St. Louis County, Missouri, on or about March 27–28, 1977, and

SECOND: The normal flow of surface water was collected and directed or permitted to collect and be directed on defendants' property, by the tilling of their garden in March, 1977, and

THIRD: The defendants permitted the discharge of water onto plaintiffs' property in concentrated and destructive quantities, and

FOURTH: Such use by defendants of their property was unreasonable, and

FIFTH: As a direct result of such conduct of defendants, the plaintiffs sustained damages.

The plaintiffs requested a similar submission for the 1979 damage, which the court also refused, giving again an MAI 22.06 type instruction (Instruction No. 4). The defendants adopted Instructions Nos. 3 and 4 as submitted by the court.

The jury returned a verdict for the defendants on both of the counts submitted. The plaintiffs appealed, claiming, along with other points about instructions and evidence, that Instructions 3 and 4 were prejudicially erroneous in requiring the jury to find as an essential element of the plaintiffs claim that the defendants' use of their property was "unreasonable." They argue that this submission introduces a requirement of negligence which is not necessary in cases involving collection and discharge of surface water.

The Court of Appeals reversed and remanded for a new trial, finding that the verdict directors were prejudicially erroneous in requiring the finding of unreasonable use. The court was of the opinion that a submission of this kind called for a finding of negligence, and therefore imposed on the plaintiffs a burden they did not have to bear under the course of decisions dealing with surface water. The court made it clear that it was not giving its approval to the plaintiffs' requested submission, and did not respond to the other points presented by the appellant, holding that these should await the settlement of instructions on retrial. We transferred the case and consider it as on initial appeal. Having so considered it, we affirm the judgment of the trial court.

■■■ Missouri follows the "modified common enemy" concept of surface water.[1]

1. The "common enemy" doctrine was announced by this Court in *Abbott v. Kansas City, St. J. and C.B. R.R.,* 83 Mo. 271 (1884). The Court indicated that there was a "due care" modification which is not involved in this case. The modifications, including the "collect and discharge" modification on which the present plaintiffs reply, are discussed in *Haferkamp v. City of Rock Hill,* 316 S.W.2d 620, 624–5 (Mo.1958), which is the leading recent case. *See* Snodgrass and Davis, "The Law of Surface Water in Missouri," 24 Mo.L.Rev. 137, 281, 298 & nn. 235–241 (1959); Comment, "The Application of Surface Water Rules in Urban

This doctrine appears to give lower, or servient, owners considerable freedom in blocking the flow of surface water onto their land from upper lands,[2] but in certain situations it places substantial restrictions on the rights of the upper owners who seek to cast surface waters onto lower lying properties. Three of the principal situations which might be the occasion for liability are well expressed in *Borgmann v. Florissant Development Co.,* 515 S.W.2d 189, 194–5 (Mo.App.1974), relying on the analysis found in the leading case of *Haferkamp v. City of Rock Hill,* 316 S.W.2d 620, 624–25 (Mo.1958), in the following language:

> What is actionable is (1) the collection of surface water into an artificial channel or volume and discharge of it in increased and destructive quantities upon the servient estate to its damage, (2) the draining off of surface waters in such a manner as to exceed the natural capacity of the drainways and (3) the discharging of surface waters onto adjacent lands to which it would not naturally drain.

The *Borgmann* court made it clear that it did not purport to catalog all the liabilities of upper owners for discharging surface water onto lower ones, but the plaintiffs assert that their case fits the first category of actionable incidents there described and we analyze it on that basis. The contention is that the defendants collected surface waters, as to the 1977 incident, by cultivating and manuring the garden, and, as to the 1979 one, by laying the tie border so as to cause an accumulation on the west side of the garden. It is then claimed that the waters so collected, in each instance, were discharged in destructive quantities onto the plaintiffs' land.

█ The defendants at oral argument invited us to hold that the plaintiffs had failed to make a submissible case. They properly moved for a directed verdict at the close of all the evidence, and, in any event, are entitled to advance any argument on appeal which would demonstrate that the judgment in their favor is correct, but they did not favor us with a brief on the issue of submissibility and consequently we will not decide the point. We say frankly, however, that we do not want to be understood as holding that a submissible case was made. The defendants' use of their land for a garden, with the attendant cultivation and fertilization, is a very ordinary kind of use in a suburban area, as is the installation of the tie border. There is no evidence that the defendants did anything to alter the contours of the land or to construct drainage channels. The plaintiffs' evidence as to the volume, source, and rate of flow of the water which they claim caused the pool to rise is not quantified, and there is no satisfactory evidence as to how much of the water flowed onto their land from the defendants' property and how much came naturally from the higher land to the west (the Zimmers' property). A finding of liability on evidence such as this might seriously inhibit homeowners in the ordinary use of their property. We express these reservations, but need not pursue the matter further since we find no error in the submission. It is not surprising that the jury found as it did.

The plaintiffs' requested instructions are framed on the theory that reasonableness of the defendants' use of their property is not properly in issue. They quote an instruction from *Hawkins v. Burlington Northern, Inc.,* 514 S.W.2d 593, 600–01 (Mo. banc 1974), which disposed of two separate appeals, involving the same parties, from different counties, in a single opinion. One of the cases, characterized by the court as a "common law trespass" case, was submitted on an instruction somewhat similar to the verdict directors offered by the plaintiff. The other case, according to the court, was submitted on a "common law nuisance" theory by an instruction essentially similar to MAI 22.06 and to the verdict directors given by the court in the present case. This court

---

Areas," 42 Mo.L.Rev. 76, 88–91 & nn. 88–107 (1977).

2. *See* Snodgrass and Davis, Note 1 *supra* at 295 nn.; *Mehornay v. Foster,* 132 Mo.App. 229, 111 S.W. 882 (1908); *Camden Special Road District v. Taylor,* 495 S.W.2d 93 (Mo.App.1973).

affirmed judgments for the plaintiff on both theories. The present plaintiffs essentially requested a "trespass" or "strict liability" submission, and the court instructed on a nuisance theory.

■ A "trespass" is a "*direct* physical interference with the person or property of another." *Mawson v. Vess Beverage Co.,* 173 S.W.2d 606, 613 (Mo.App.1943), citing Chitty's *Pleadings.* The essence of the action is wrongful entry. Trespass has its origin in an intentional act, even though the actor may not intend to invade the property of another. The point is nicely illustrated by Judge Houser's opinion in *Corrington v. Kalicak,* 319 S.W.2d 888 (Mo.App.1959), in which the defendant obstructed the flow of a running stream by installing an added substructure during the replacement of a bridge. There followed an abnormal rainfall and the stream, because of the obstruction, backed up and flooded the plaintiff's land. The court held that the plaintiff was entitled to submit the case on a trespass theory, with no obligation to plead or prove negligence. There was no need to submit a nuisance theory, inasmuch as the act of obstructing of a natural watercourse was sufficient to make a case for liability. This case is not otherwise helpful in our analysis, since it deals with the flow of a natural waterway rather than with surface water. *See Happy v. Kenton,* 362 Mo. 1156, 247 S.W.2d 698 (1952).

Among the cases particularly relied on by the defendant, *Clark v. City of Springfield,* 241 S.W.2d 100 (Mo.App.1951), and *Wells v. State Highway Commission,* 503 S.W.2d 689 (Mo.1973), are clearly distinguishable, since they involve, respectively, the discharge of raw sewage and the filling of the plaintiff's lake with mud and silt. It is not difficult to find trespass in the discharge of matter so different from the ordinary surface water resulting from rain and snow. *Haferkamp v. City of Rock Hill,* 316 S.W.2d 620 (Mo. 1958), is of little help to the plaintiffs because its essential holding is that the giving of an instruction which would make defend-

ants liable for any increase in the volume of water flowing in a natural drainage channel was prejudicially erroneous.

*Hawkins,* then, is the best example of a trespass submission emanating from this Court in a surface water case. There the defendant railroad built an embankment and a culvert designed to direct the course of surface water. The construction altered the direction and flow of the drainage, as intended. The engineer, however, failed properly to complete the job, omitting the guide wall necessary to "turn" the water into drainage ditches below the new culvert. The water, as a result, arched over the ditch bank and flooded plaintiff's adjacent field, rather than draining through the ditches. There was also evidence that the harmful effects of the installation could have been dissipated by the construction of a "wing wall" at an angle to divert the flow of water toward the natural channel, but the court held that negligence was not an essential element of the case. The plaintiff therefore was upheld in the submission of one of the two cases on a trespass theory and the other on a nuisance theory. The significant circumstance is that the defendant undertook construction designed to affect the flow of surface water. When the results were as shown by the evidence it was not difficult to find that kind of unlawful invasion which makes a trespass submission appropriate. The court observed that the trespass instruction "in its submitted facts, does not impose absolute liability."

■ The fact situation in *Hawkins* is far different from the one before us. The present defendants, in cultivating and embellishing a garden, engaged in typical suburban homeowners' activity. Neither the spreading of the manure nor the erection of the tie border was designed to have a significant effect on the drainage.[3] Even if the plaintiffs establish that the defendants' improvements caused the collection of surface water and its discharge in destructive quantities following heavy rains, we do not find in the record anything approaching an

---

3. We are mindful of the setting of the ties in two inches of concrete, partly to keep water

out of the garden, but do not consider this to be a substantial drainage project.

"unauthorized entry" or "invasion" or "disturbance of possession" which is characteristic of trespass cases. The situation shown by this record is not the kind of situation in which the law imposes strict liability. We conclude that the trial court did not err in refusing the verdict directors requested by the plaintiffs.

The other cases relied on by the plaintiffs in support of their strict liability all involve conduct by an upper owner specifically designed to increase the flow of surface water onto lower land, and therefore are much closer to *Hawkins* than to the case before us. The cases have approved instructions based on collection and discharge in destructive quantities, with no requirement of showing negligence. These are *Kiger v. Sanko,* 1 S.W.2d 218 (Mo.App. 1927); *Blydenburgh v. Amelung,* 309 S.W.2d 150 (Mo.App.1958); *Peters v. Shull,* 379 S.W.2d 837 (Mo.App.1964). The submissions were similar to that referred to in *Hawkins* as "common law trespass."

Since we conclude that the plaintiffs did not request an appropriate alternate solution to that provided by the court, and the verdict went against them, there might be a question as to whether they are entitled to complain about the legal theory underlying the verdict directors actually given. We conclude, nonetheless, that the instructions prepared by the court on the model of MAI 22.06 are not shown to be erroneous, and that they adequately support the judgment. The term "nuisance" connotes the use of one's property in a manner which is not abstractly unlawful but which, in the circumstances, demonstrates an unreasonable interference with the rights of neighboring property owners.[4] Many cases involving claims of nuisance are tried to the court because they involve requests for injunctive relief, and so a judge determines issues of reasonable and unreasonable use, but if a nuisance case is to be submitted to a jury the jury must necessarily be instructed in terms of the reasonableness of the defendants' use of their property. MAI 22.06 is amply buttressed by authority in cases not dealing with surface water,[5] and our attention has not been called to a surface water case in which the submission of an issue of unreasonable use has been held to be erroneous. Numerous surface water cases hold that "nuisance" is one of the appropriate theories for submission,[6] and the cases regularly speak of questions of reasonableness of the defendant's conduct.[7] Nor do we find any support for

---

4. "The use of property for a particular purpose and in a particular way in one locality may be reasonable and lawful, but such use may be unreasonable, unlawful and a nuisance in another locality." *Clinic & Hospital, Inc. v. McConnell,* 236 S.W.2d 384, 391 (Mo.App. 1951). *See also Meinecke v. Stallsworth,* 483 S.W.2d 633, 637 (Mo.App.1972).

5. See the instruction set out in *Bower v. Hog Builders, Inc.,* 461 S.W.2d 784, 797 (Mo.1971), involving a pre-MAI submission of an instruction similar to MAI 22.06. MAI 22.06 was the basis for the instructions given in *Genova v. City of Kansas City,* 497 S.W.2d 555, 558 (Mo. App.1973) and the nuisance claim in the *Hawkins v. Burlington Northern, Inc.,* 514 S.W.2d 593, 602 (Mo. banc 1974). We note plaintiffs' observation that the plaintiffs in the last two cases sponsored, rather than challenging, the instructions given, but this observation is advanced in support of their contention, which we have rejected, that they are entitled to a strict liability submission. *See also* Comment, "The Law of Private Nuisance in Missouri," 44 Mo.L.Rev. 20, 21–22 (1979) discussing MAI 22.-

06 at pp. 52–54; Restatement of Torts, § 822 (1939).

6. *Hawkins v. Burlington Northern, Inc.,* 514 S.W.2d at 599; *Clark v. City of Springfield,* 241 S.W.2d 100 (Mo.App.1951); *Blydenburgh v. Amelung,* 309 S.W.2d 150 (Mo.App.1958). *See also Spain v. City of Cape Girardeau,* 484 S.W.2d 498, 506 (Mo.App.1972) (reversing a strict liability submission and remanding for trial under alternative theories of nuisance and negligence); *Rebel v. Big Tarkio Drainage Dist.,* 602 S.W.2d 787, 791–2 (Mo.App.1980).

7. *Haferkamp v. City of Rock Hill,* 316 S.W.2d at 625; *Spain v. City of Cape Girardeau,* 484 S.W.2d at 502; *Skaggs v. City of Cape Girardeau,* 472 S.W.2d 870, 873 (Mo.App.1971); *Wells v. State Highway Commission,* 503 S.W.2d 689, 692 (Mo.1973) ("within reasonable limits, and not recklessly," *Young v. Moore,* 241 Mo.App. 436, 236 S.W.2d 740, 744 (Mo. App.1951), from which the phrase just quoted is taken, and which cites numerous cases); *Peters v. Shull,* 379 S.W.2d 837, 840 (Mo.App. 1964) (reasonable use and development); *Borg-*

the plaintiff's argument that the issue of reasonable use may only be submitted in cases involving the second and third situations as set out in the *Borgmann* analysis, and that this issue is not appropriate in a case in the first (collection and discharge) category.

■ We do not agree with the claim advanced by the plaintiff that an instruction calling for a finding of unreasonable use is faulty in introducing negligence concepts into a case in which they do not belong. The question of unreasonable use in the context of MAI 22.06 relates not to foreseeability or to due care, but to the balancing of rights of adjoining owners, as is appropriate in nuisance cases. Theories of negligence and nuisance have different elements, and the instructions as given did not confound them. Although surface water cases may be submitted in a variety of ways, not all submissions are available in all cases. Since we conclude that a strict liability theory is not available in this case, and since the plaintiffs made no attempt to plead or prove negligence, only the nuisance theory, with the requirement of establishing unreasonable use, remains.

■ The plaintiffs also complain that Instruction No. 3 (manure spreading) hypothesizes a collection and direction of surface water "on defendant's property," whereas the proper submission should refer to a direction "*from* defendants' property." The plaintiffs' trial theory was that the cultivated and manured garden was highly absorbent, that it therefore collected surface water from adjacent grassy areas, and that, when the garden soil became saturated, the water was discharged from the garden onto the plaintiffs' land. The instruction accurately presents the plaintiffs' hypotheses of collection and discharge.

They also argue that Instruction No. 4 inaccurately stated the facts shown in evidence by hypothesizing the collection and discharge of surface water "from defendants' garden" following the laying of the

ties whereas the evidence shows that the water collected *to the west of the garden* and was kept out of the garden by the ties, which acted as a dam. We do not believe that the jury was confused about the plaintiffs' theory by this submission, and are unwilling to reverse on such a hypertechnical point. Had there been a request for clarification when the court prepared Instruction No. 4 it undoubtedly would have been honored. There must be a rule of reason in the flyspecking of instructions.

■ Objection is taken to Instructions 3 and 4 because they use the phrases, "normal flow" and "normal flow of surface water," and because these phrases are not further defined. We believe that the phrases employ words of ordinary understanding, and that jurors would take them to mean the flow of water as it would have been but for the defendants' gardening improvements. *Cf. State v. Rodgers,* 641 S.W.2d 83, 85 (Mo. banc 1982). The plaintiffs should have requested a further definition or an explanatory instruction if they felt that the instruction as given was not sufficiently clear or precise.

■ The plaintiffs next object to the admission of evidence that the rising of the pool might have been avoided if there had been an underlying gravel bed, or that the 1977 incident might have been corrected through the use of pressure release valves which were at hand but not installed. They argue that this evidence would be appropriate only under counts of the original petition which had been abandoned previously, and that they operate to the plaintiffs' prejudice by introducing concepts of contributory negligence which are foreign to cases based on trespass or nuisance. Clearly at issue here, however, was the issue of the cause of the mishaps to the swimming pool. The jury well might have felt that the pool rose because of the plaintiffs' failure to take proper steps in installation and maintenance, rather than because of the di-

*mann v. Florissant Development Company,* 515 S.W.2d 189, 194, 196 (Mo.App.1974); *Miller Land Company v. Liberty Township,* 510

S.W.2d 473, 476 (Mo. banc 1974); *Roberts v. Hocker,* 610 S.W.2d 321 (Mo.App.1980), with extensive and valuable discussion.

rection of surface water from or near the garden area and onto the plaintiffs' land. It might well believe, moreover, that a defendant's use would be unreasonable if it caused a properly positioned pool to rise out of the ground, but not unreasonable if the plaintiffs had failed to make use of the best information available concerning the foundation of their pool and the use of available mechanical devices. The jury was not instructed on contributory negligence and we do not believe that the evidence introduced impermissible considerations.

The plaintiffs contend, finally, that they are entitled to a new trial because the uncontradicted evidence shows that they are entitled to recover. We of course hold that there was, at the very least, a jury issue of liability.

The judgment of the circuit court is affirmed.

RENDLEN, C.J., GUNN and DONNELLY, JJ., and HOUSER, Senior Judge, concur.

HIGGINS, J., concurs in separate concurring opinion filed.

WELLIVER, J., concurs and concurs in separate opinion of HIGGINS, J.

BILLINGS, J., not sitting.

DONNELLY, J., withdraws his concurrence and dissents on April 26, 1983.

HIGGINS, Judge, concurring.

In this case defendants developed their land in a manner which caused surface water to gather and flow onto plaintiffs' property. In such cases the rule in *Haferkamp v. City of Rock Hill*, 316 S.W.2d 620, 626 (Mo.1958) is applicable. Whether defendants were engaged in a project designed to alter the flow of surface water is irrelevant. *E.g., Wells v. State Highway Comm'n*, 503 S.W.2d 689, 690–92 (Mo.1973) (where defendant graded land and left in uncovered condition; held liable under *Haferkamp* rule).

I concur because there is no evidence that the damage to plaintiffs' property was the result of defendant's negligence in causing an accelerated and increased flow of surface water upon plaintiffs' land which exceeded the natural capacity of a natural drainway. *See Miller Land Co. v. Liberty Township,* 510 S.W.2d 473, 476 (Mo. banc 1974) (quoting *Haferkamp,* 316 S.W.2d at 625–26).

ON MOTION FOR REHEARING

PER CURIAM.

The appellants have filed a Motion for Rehearing which, for the most part, simply reflects the intendment of the opinion and our evaluation of the earlier cases from this Court and the Court of Appeals, rather than pointing to anything which the Court misinterpreted or overlooked. The motion points out what is actually a scrivener's error in the discussion of Instruction No. 3, and correction has been made.

The appellants cite *Paddock v. Somes,* 102 Mo. 226, 14 S.W. 746 (1890), for the proposition that the victim of a nuisance has no duty to expend money or effort to avoid or mitigate anticipated damage from a nuisance. The Missouri law of nuisance has been substantially refined since that ancient case, rendered by a sharply divided court. As the principal opinion points out, the law of nuisance balances the rights of neighboring landowners in the conduct of activities which are not inherently unlawful. *See* Committee Comment accompanying MAI 22.06. In balancing these rights concepts of relativity have substantial significance. *Paddock* appears to have been decided at a time when the difference between the concepts of trespass and nuisance was not so sharply delineated, and should no longer be followed to the extent that it conflicts with the views expressed in the present opinion. Evidence of the plaintiffs' fault, moreover, is appropriate in determining the element of causation, quite apart from any issue of contributory negligence. *See Albers v. Church of the Nazarene,* 698 F.2d 852 (7th Cir.1983).

The Motion for Rehearing is overruled.

HIGGINS and WELLIVER, JJ., would grant a rehearing.