**John KIRKHAM and Marilyn Kirkham, Appellants/Cross–Respondents,**

v.

**Kingsley O. WRIGHT and Joyce Wright, Respondents/Cross–Appellants.**

**Nos. 53386, 53449.**

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 13, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 19, 1988.

Application to Transfer Denied Dec. 13, 1988.

Joseph J. Dolgin, Clayton, for respondents/cross-appellants.

Paul E. Kovacs, Gary P. Paul, David T. Weir, Clayton, for appellants/cross-respondents.

KELLY, Judge.

John and Marilyn Kirkham, husband and wife, brought a nuisance action against their next-door neighbors Kingsley O. Wright and Joyce Wright, for damages to the Kirkhams' premises from excessive surface water runoff allegedly resulting from the Wrights' installation of an in-ground swimming pool. The jury returned a unanimous verdict in favor of the Kirkhams in the amount of $56,600.00. The trial court granted the Wrights' motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial and ordered a new trial. The trial court also set aside its prior order which had directed a verdict in favor of the Wrights on count one of the counterclaim against the Kirkhams seeking an injunction mandating the Kirkhams remove a retaining wall which the Kirkhams had built on their property. Both sides have filed appeals. In the interest of judicial economy, the appeals have been consolidated. We affirm the judgment of the trial court.

The Kirkhams moved into their newly-constructed ranch house on Kettington Road in Chesterfield, Missouri, around December 1974. Next door, immediately west of the Kirkhams, the Wrights had lived since 1971 in a two-story home situated at the intersection of Whitby Road and Kettington Road. Both homes face north toward Kettington Road which runs east and west. To the south of both homes backing their rear lots is the Kingsfield Subdivision, a development started in about April 1979. The rear of the Kirkhams' lot slopes up to the south towards the Kingsfield subdivision. The Wrights' lot slopes uphill to the south and also to the west. Thus, the terrain is basically a downhill slope from Kingsfield to the Wrights to the Kirkhams. The Kirkhams' property is also lower than that of their neighbor on the east side of their property. Surface water flows generally from uphill down across the Wrights toward the Kirkhams' property in a southwest to northeast direction.

To counteract the flow of water runoff onto the low-lying property, the builder of the Kirkhams' home constructed a swale around the home. The swale started at the driveway turnaround on the west side toward the rear, went behind the house, then along the east side of the house in a downhill direction toward Kettington Road, which runs east and west in front of the Kirkhams' residence. The swale was only a slight depression in the land about five feet wide and two feet deep.

At the same time the grading and filling activities were started for building of the Kingsfield development, the Wrights began construction of an in-ground swimming pool in the fall of 1979. The pool was completed the following spring in 1980, and first opened for use in April or May. The terrain where the pool was installed sloped downward toward the Kirkhams' property. After a heavy rain, the surface water draining down the slope carried mud, debris and mulch into the pool. To abate the problem of debris in the pool, the Wrights eventually in September 1980 excavated a diversionary swale approximately nine feet wide and six to eight inches deep around the pool area to channel the water around the pool. They also had a landscaper install tie-walls terracing the slope. After the additions of the swimming pool and swale on the Wrights' property, the surface water ran off their property in a more concentrated channel flow rather than its previous sheet flow.

The Kirkhams testified that they first noticed some water problems in January or February 1980. The Kirkhams had installed a four inch curb along their driveway in mid–1976. They complained that water from the construction site for the swimming pool would back up against their curb and just stand there, forming a sheet of ice in the driveway during the winter months. On three occasions in May, June, and July 1980, water entered into the Kirkhams' basement from the wells of the windows

situated at ground level on the east side of their residence.

Mr. Kirkham believed the flooding was caused when the swale around the back of their house filled up and overflowed. The Kirkhams subsequently installed new non-perforated drain tile to eliminate the problem.

Water also continued to collect and stand on a low point of the Kirkhams' property along their west property line. This low point also extended from the Kirkhams' yard to the Wrights. The Kirkhams attributed this water's accumulation to drain pipes placed on the Wrights' lot outside the pool area which were designed to drain the water from the concrete apron of the pool and from the surrounding shrubbery. The Kirkhams also believed the standing water problem along here was exacerbated by the Wrights' activities in cleaning their pool. The standing water caused the Kirkhams' property to stay wet and swampy, almost brackish. The swale and tie walls installed by the Wrights in September 1980 did not remedy the problem to the Kirkhams' satisfaction.

The Kirkhams installed a drain system in October 1984 on their property. They subsequently obtained an easement from the Wrights in July 1985 to construct a second drain on the Wrights' property and to the newly-added above ground drainage system into the water system built earlier by the Kirkhams. At the same time the Kirkhams built the drain on the Wrights' property, they also constructed a railroad tie-wall with an earthen berm built up behind it on their own property, about fifteen inches east of the Wrights' wrought iron fence on the parties' property line. The wall prevented the flow of water, which otherwise would have run down from the Wrights' side yard to the Kirkhams, in order to have the water empty into the drain pipe where the drainage system would carry it off. The tie-wall acted like a retaining wall, causing the water to collect in a slight depression of the Wrights' property and to form a small pond on the Wrights' property until emptied by the drain.

These projects apparently resolved the water problems, but not the strained relationship between the neighbors. The frustration with the water problems in the backyards spilled over into their front yards. The parties disputed whether a brick wall built by the Wrights in front of the Wrights' home encroached upon the Kirkhams' yard. One Sunday morning the Kirkhams chiselled away two-thirds of the brick wall, the portion they claimed was on their property.

The Kirkhams sued the Wrights for damages to their property allegedly resulting from the Wrights' installation of the swimming pool, swale and retaining walls on the Wrights' property. The Wrights counterclaimed against the Kirkhams seeking both an injunction to have the tie wall built by the Kirkhams in 1985 removed and also damages for intentional infliction of emotional distress. In response, the Kirkhams filed their own counterclaim, a two count action in ejectment and quiet title over the brick wall on the property line of the parties' front yards.

In the course of the nine day trial, the jury heard testimony from twenty-four witnesses including two expert witnesses for the Kirkhams and one expert witness for the Wrights. The parties presented nearly two hundred photographs and exhibits. At the conclusion of the trial, the trial court sustained the Kirkhams' motion for directed verdict on their counterclaim against the Wrights for ejectment. The trial court also granted the Wrights' motion for directed verdict on count one of their three count counterclaim relating to the removal of the tie-wall built by the Kirkhams. The Wrights had voluntarily dismissed without prejudice the second count of their counterclaim.

After the instruction conference, the trial court submitted the case to the jury, giving the jury over the Wrights' objection the verdict director requested by the Kirkhams. The jury retired. After about two and one half hours of deliberation, the jury returned a verdict for $56,600.00 in favor of the Kirkhams in their nuisance action against the Wrights. The jury denied re-

covery to the Wrights on count three of their counterclaim against the Kirkhams for infliction of emotional distress.

Following the parties' various post-trial motions, the trial court granted the Wrights' motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial and ordered a new trial. The trial court also set aside its earlier order which had directed a verdict in favor of the Wrights on count one of their counterclaim against the Kirkhams for removal of the tie-wall built by the Kirkhams.

The trial court's order which granted the Wrights' motion for new trial stated that the verdict was against the weight of the evidence and that the Kirkhams' verdict director was an erroneous instruction. The trial court expressly noted the instruction was flawed based on three grounds raised by the Wrights in their motion for new trial.

The Kirkhams have raised three points on appeal. Their first point, dealing with the propriety of the verdict director, disputes each of the three grounds for finding the instruction erroneous. Their second point challenges the trial court's finding that the verdict was against the weight of the evidence. Their third point on appeal contends the trial court's grant of the Wrights' motion for new trial reflected bias and prejudice, so that the order should be set aside.

The Wrights answer each of the Kirkhams' points and further respond that the Kirkhams failed to make a submissible case under a nuisance theory and that the damage instruction given was erroneous.

In their cross-appeal, the Wrights argue that the trial court's action in setting aside its previous order mandating that the Kirkhams remove an earthen and railroad tie-wall was against the weight of the law and an abuse of discretion under the circumstances. They also contend the decision to set aside its previously granted injunction was erroneous because the Kirkhams' motion to set aside the order failed to state any legitimate ground in support of their motion.

We will dispose of the two appeals in the following order: 1) the Kirkhams' direct appeal, 2) the additional points raised by the Wrights as respondents, and 3) the Wrights' cross-appeal.

## I.

We first address the second issue raised by the Kirkhams who question the propriety of the trial court's decision to grant the Wrights a new trial because the verdict was against the weight of the evidence. At the outset, we note the general rule which provides that an appellate court will be more liberal in upholding a trial court's decision to grant a new trial than it will be if the trial court denies a new trial. *Holtgrave v. Hoffman*, 716 S.W.2d 332, 334[1] (Mo.App.1986). Our review of the grant of a new trial is limited to the determination whether the trial court has clearly abused its discretion. *Id.* at 334–35[2]. Where the court grants a new trial to a defendant on the ground that the verdict was against the weight of the evidence, the appellate court need not determine whether the evidence was sufficient to support a verdict for defendant because defendant is not required to present evidence to weigh. *Reyes v. St. Luke's Hospital of Kansas City*, 716 S.W. 2d 294, 295[2] (Mo.App.1986). The trial court has the right and duty to consider and weigh the evidence in light of its superior opportunity to hear and observe the witnesses and to give their testimony the weight and value it deserves. *Id.* [3].

Citing *Lupkey v. Weldon*, 419 S.W.2d 91, 94 (Mo. banc 1967) (Seiler, J. concurring), Judge Manford observed in *Reyes* that the appellate court has no way of knowing why the trial judge concluded that the verdict for plaintiff was against the weight of the evidence. 716 S.W.2d at 295–96. The trial court may have granted the new trial for some matter known to the court that does not and cannot be reflected in the record. *Id.* at 296. The trial court's order granting a new trial is presumptively correct and appellate courts defer to the trial judge in these cases even though the appellate court may believe that it would have reached the opposite conclusion. *Id.*

Viewed in light of the foregoing authority, we are unable to conclude that the trial court clearly abused its discretion in granting a new trial on the ground that the verdict was against the weight of the evidence.

█ The Kirkhams discuss whether substantial evidence supports the trial court's decision to grant the Wrights a new trial. Focusing on their verdict director, the Kirkhams paraphrase the instruction as requiring that the jury find the Wrights' installation of their swimming pool and swale collected and directed the normal flow of surface water and permitted its discharge from the Wrights' onto the Kirkhams' premises in concentrated and destructive quantities and that such use was unreasonable. The Kirkhams state that no evidence was introduced to dispute each element of the verdict director. The Kirkhams conclude the trial court erred in granting the Wrights a new trial on the ground that the verdict was against the weight of the evidence.

We disagree. Our inquiry is whether the trial court clearly abused its discretion by its decision to grant a new trial on the ground that the verdict was against the weight of the evidence. *Holtgrave*, 716 S.W.2d at 334–35[2]. Without totally second guessing the trial court, we cannot conclude that the trial court clearly abused its discretion.

In addition to the facts previously set out, the evidence showed that the Wrights were concerned about the effect the installation of the swimming pool would have on the Kirkhams. Marina Pools, the company which built the swimming pool, submitted its initial proposal stating that the swimming pool would not cause any additional rainwater to pass onto the Kirkhams' property. William Harris of Marina Pools had noticed water sitting next to the Kirkhams' driveway on one occasion when he was reviewing the site prior to the pool's construction. Mr. Harris also felt the volume of water flowing onto the Kirkhams' property was the same before and after the pool's construction. Roy Dossett, the expert witness for the Wrights, testified that the elevation from the highest to the lowest point of the Kirkhams' property falls approximately fourteen feet towards the street, with that area graded to permit water to flow between the two neighbors' properties. He first stated that the placement of the pool did not change the amount of water flowing onto the Kirkhams' property. He later noted that the pool's displacement of earth might affect the amount of surface water capable of being absorbed by percolation so that there might be a slight increase in the amount of surface water flowing onto the Kirkhams' property. Mr. Dossett disbelieved that the Kirkhams had no water in their basement prior to the pool's installation. In addition to his opinion, a neighbor also testified she recalled Mrs. Kirkham mentioning some problem with water in the basement prior to the installation of the swimming pool.

The Kirkhams' own expert witness Frank Illingworth, an engineer, testified that the pool had a "negligible effect" on the flow of water from the Wrights' to the Kirkhams' premises. He mentioned that the pool might, in fact, slow down the velocity of surface water running down from the southwest corner to the northeast corner of the Wrights' property and then east onto the Kirkham property.

Eugene Brucker, another engineer retained by the Kirkhams, noted that the swale around the Wrights' pool was designed to keep surface water and debris from flowing into the pool. In his opinion, the installation of the swale eliminated the sheet flow, changed the direction of the water and concentrated the water onto the Kirkhams' property. However, he voiced no criticism of their installation of the swale and believed it to be a reasonable precaution. He did not believe that the swimming pool's installation had increased either the amount or the velocity of the water flowing from the Wrights' towards the Kirkhams' home. He further explained that the excavation needed to install the pressure relief pipes for the swimming pool slightly lowered the grade between the two properties creating a low area where the water collected and stood.

Nevertheless, he acknowledged that other explanations might also account for water standing in the low area after the pool's installation, including evidence that water had always stood there on greater than average rainfalls. Viewed in light of the standard of review announced in *Holtgrave*, 716 S.W.2d at 334–35[2] and the foregoing evidence, we do not believe the trial court clearly abused its discretion in granting a new trial on the ground that the verdict was against the weight of the evidence.

The Kirkhams also complain of the trial court's decision to grant the Wrights a new trial on the ground that the verdict director was erroneous based on paragraphs three, four and five of the Wrights' motion for new trial. When the trial court grants a motion for new trial on grounds of prejudicial error in the instructions, whether the instruction is erroneous and, thus, prejudicial is a question of law to be determined on the record presented. *Kuzuf v. Gebhardt*, 602 S.W.2d 446, 449[1] (Mo. banc 1980); *Craft v. Scaman*, 715 S.W.2d 531, 533–34[2] (Mo.App.1986).

Paragraph three of the Wrights' motion for new trial contended that although the instruction was proper in a "collection and discharge" situation, the Kirkhams' evidence failed to show that the Wrights were collecting and discharging water. The Wrights argued the evidence showed only that the Wrights' attempts to divert water around their swimming pool resulted in the change of surface water from a sheet flow into channels in areas where the water would have ordinarily gone.

Paragraph four stated the verdict director gave the jury a roving commission to find against the Wrights because the wording of the instruction made the Wrights liable for any surface water passing across their property, in its natural state and ending up on the Kirkhams' property in the same position it would have ended up, regardless of the presence of the Wrights' swimming pool.

Paragraph five set forth that the instruction misstated the Wrights' legal duty to the Kirkhams. The Wrights claimed the instruction created the false impression that, regardless of the swimming pool or swale, if the jury found water was discharged onto the Kirkhams' premises, the Wrights had a legal obligation to prevent the discharge of that water on the Kirkhams' premises. The Wrights argued that under the common enemy doctrine they had no legal obligation to alter the natural flow of surface water to prevent it from entering the Kirkhams' property when the evidence established that the surface water had naturally flowed in the same path before the construction of the Kirkhams' residence or the Wrights' pool.

The Kirkhams' verdict directing Instruction No. 7 provided:

Your verdict must be for Plaintiffs John Kirkham and Marilyn Kirkham against Defendants Kingsley Wright and Joyce Wright if you believe:

First, Plaintiffs owned the property at 145944 Kettington Road, Chesterfield, Missouri, on or about November, 1979, and

Second, the normal flow of surface water was collected and directed, or caused to be collected and directed, on the property of Defendants Kingsley Wright and Joyce Wright by the installation of the swimming pool and swale, onto the Plaintiffs' property, and

Third, the Defendants permitted the discharge of water onto Plaintiffs' property in concentrated and destructive quantities, and

Fourth, such use by Defendants Kingsley Wright and Joyce Wright of their property was unreasonable, and

Fifth, as a direct result of such conduct of Defendants, the Plaintiffs sustained damages.

Instruction No. 7 is adopted from and substantially the same as the instruction approved in *Looney v. Hindman*, 649 S.W. 2d 207, 210 (Mo. banc 1983). In *Looney*, our Missouri Supreme Court noted three types of surface water situations that are generally actionable:

(1) the collection of surface water into an artificial channel or volume and discharge of it in increased and destructive

quantities upon the servient estate to its damage; (2) the draining off of surface water in such a manner as to exceed the natural capacity of the drainways; and (3) the discharging of surface waters onto adjacent lands to which it would not naturally drain.

*Id.* at 211, citing *Borgmann v. Florissant,* 515 S.W.2d 189, 194–95 (Mo.App.1974). In *Looney* our supreme court analyzed the instruction formulated by the trial court about which plaintiffs complained on appeal following a jury verdict for defendant. It concluded that the instruction was an acceptable submission under a nuisance theory in a collection and discharge case. *Looney,* 649 S.W.2d at 214–14.

We likewise conclude that the Kirkhams pleaded and presented evidence consistent with the first type of surface water situation of collection and discharge.

The Kirkhams alleged in their petition that the Wrights changed or caused to be changed the grading, landscaping, and topography of the Wrights' premises "to divert surface water from its natural drainage and impound it and cause to be impounded surface waters and diverted and disgorged said waters in great quantities onto Plaintiffs' land ...". They further alleged that a swale was placed around the pool "to divert water away from said pool ... and as a result thereof, the Defendants Wright have caused water in great, increased and destructive quantities and concentrated flow to move and flow from their said property, and from and around said swimming pool, after having collected therein and thereunder, onto the property of the [Kirkhams]."

Appellants further alleged that "said drainage is beyond and exceeds the natural capacity of the drainways to handle such drainage." This allegation sounds as if the Kirkhams' surface water action fell within the ambit of the second type of surface water situation described in *Looney.* However, the other allegations clearly set forth a nuisance theory based upon the collection and discharge exception to the modified common enemy doctrine followed in Missouri. If the Wrights had any misapprehension from the Kirkhams' pleadings about which surface water situation the Kirkhams were complaining the Wrights could have filed a motion to make more definite and certain much earlier in the proceedings.

The Kirkhams presented evidence that the Wrights' installation of their swimming pool converted the natural sheet flow of water into a channeling of water by the diversionary swale around the Wrights' swimming pool. The Kirkhams' evidence supported their submission of the action as one for collection and discharge. We conclude the instruction based on that given in *Looney* properly controlled here. To the extent the trial court predicated its grant of new trial on instructional error with the verdict director, the trial court did err.

■ The Kirkhams' third point states the trial court's granting the Wrights a new trial reflected bias and prejudice. The bias and prejudice alluded to concerned a statement by the judge to the Kirkhams' counsel. Before trial began, the judge advised counsel of the following: he had previously owned a pool built by the same person who built the Wrights' pool; he had no problems with his pool; and he had used the same company which landscaped the Wrights' property. Kirkhams' counsel told the judge he was unconcerned by the foregoing. The disclosure about which Kirkhams' counsel now complains was a comment the judge made off the record while sitting in chambers during one of the recesses on the eighth day of the nine day trial. According to Kirkhams' counsel, the judge remarked to him that if his clients thought they had a water problem, they ought to have his [the judge's] water problem. The following morning, counsel made an oral motion for mistrial claiming the statement bespoke judicial bias. Before ruling on the motion for mistrial, the judge acknowledged that he owned a twelve and one-half acre lake adjacent to his home and that he had "water problems". Adding that he had indicated no prejudice or bias throughout the trial and that his difficulties with his lake had nothing to do with any of the parties, he denied the motion for

mistrial. Nothing further appears on the record. The nature or magnitude of the judge's water problems were not explored.

An oral motion to disqualify for personal bias or prejudice of the trial court is addressed to the trial court's sound discretion. *City of Kansas City v. Wiley,* 697 S.W.2d 240, 244 (Mo.App.1985). "When the disclosure of possible bias arises ... there should be some evidence that this prejudice does in fact exist." *Swain v. Simon,* 699 S.W.2d 769, 774 (Mo.App.1985).

Our review of the entire record discloses nothing indicative of bias or prejudice by the court. We agree with respondents that it would seem logical that any water problems suffered by the trial judge would make him more sympathetic to the Kirkhams' position, thus eliminating the possibility that the Kirkhams were prejudiced by trial court bias if any were reflected in the record. Furthermore, if the trial judge had harbored a jaundiced view of the Kirkhams in favor of the Wrights, he would have granted the Wrights judgment notwithstanding the verdict instead of ordering a new trial; he also would not have vacated his earlier order directing a verdict in favor of the Wrights on count one of their counterclaim against the Kirkhams. Point denied.

## II.

Having determined that appellants are not entitled to a reversal of the judgment of the trial court, we address two additional issues raised by respondents. The Wrights contend 1) the Kirkhams failed to make a submissible case under a nuisance theory and 2) the damage instruction given was erroneous.

■ The Wrights' first point attacks the submissibility of the Kirkhams' nuisance action against them for three reasons. First, the Kirkhams' evidence failed to establish that the Wrights' conduct caused an increase in water that exceeded the natural capacity of the drainway; furthermore, any damages the Kirkhams sustained were caused by their own acts in altering the natural drainways in the construction of their home, installing a swale around their home and making other improvements at or near their home. Second, the Kirkhams' evidence failed to establish causation between the alleged nuisance and their damages. To support their argument of no causation, the Wrights highlight testimony by Mr. Bruckner, an engineer, that there was no connection between the surface water coming from the swimming pool swale to the swale surrounding the Kirkhams' property and that most of the water entering the Kirkhams' basement windows came from their own property. While citing those portions of Brucker's testimony to support their view of no submissible case, they denigrate his opinion that excavation for the installation of the pool had caused surface water to pond in the low area between the parties' homes. They claim that this testimony by Brucker was unsupported by and, in fact, contradicted the record. Their third reason challenging submissibility states the Kirkhams failed to produce any evidence of diminution and fair market value of their property.

We will not belabor this already lengthy opinion by recapitulating the facts set forth *supra.* The trial court judge apparently felt the Kirkhams made a submissible case when he decided to submit the case to the jury. We, likewise, are satisfied. Even a cursory review of the transcript when viewed in the light most favorable to the Kirkhams reveals an evidentiary basis for each element set forth in the verdict director. Point denied.

■ The Wrights' second point claims the damage instruction given was erroneous. The Wrights assert that damage instruction number eight modeled on MAI 4.01 [1980 Revision] was improper because its reference to the verdict director gave the jury a roving commission to speculate that any water entering the Kirkhams' premises resulted from the placement of the swimming pool and the swale. The Wrights also fault the instruction stating that, if the Kirkhams complained of a temporary nuisance, the instruction given should have been modified to allow damages only for the period before the lawsuit was filed. If the Kirkhams were complain-

ing about a permanent nuisance, the proper instruction was MAI 9.02.

Instruction number eight provided:

If you find in favor of plaintiffs on plaintiffs' claim for damages, then you must award plaintiffs such sum as you believe will fairly and justly compensate plaintiffs for any damages you believe they sustained as a direct result of the conduct of defendants as submitted in instruction number 7.

As the Wrights' "roving commission" attack on the instruction presumes the verdict director was improper, our earlier determination to the contrary on the verdict director renders unnecessary any further discussion of this reason.

The Wrights' additional attacks on the instruction are based on their contention that the instruction was faulty under either a temporary or permanent nuisance theory. The Wrights made no objection to the instruction at trial and did not raise this specific objection to the instruction in its motion for new trial as required under Rule 70.03. We deem they are foreclosed from now presenting it on appeal. We decline to address this issue since it was not properly preserved for appellate review.

### III.

■ Our final consideration is the disposition of the Wrights' cross-appeal. After the Kirkhams had filed suit against the Wrights, the Wrights in turn filed their counterclaim against the Kirkhams. Their counterclaim was an equitable action seeking an injunction mandating the Kirkhams remove a ninety-seven feet long retaining wall along the length of the parties' side yards which the Kirkhams had built on their property. The effect of the tie wall was to dam all the water that flowed to that area down from the Wrights' yard, causing the water to accumulate on the Wrights' property before two inground drains carried away the water retained by the wall.

The day before the trial court submitted the Kirkhams' nuisance action against the Wrights to the jury, the Wrights made an oral motion for a directed verdict on count one of their counterclaim for an injunction.[1] The trial court "sustained" the motion and ordered the Kirkhams to remove the railroad tie-wall with its earthen berm built up behind the tie-wall.

After the jury returned its verdict in favor of the Kirkhams on their nuisance action against the Wrights, the Kirkhams filed a motion to set aside the injunctive relief previously ordered. The trial court judge disposed of all post-trial motions in one order in which he sustained both the Wrights' motion for new trial on the Kirkhams' nuisance action and also the Kirkhams' motion to set aside the directed verdict for the Wrights on their counterclaim against the Kirkhams.

At the outset, we note the parties differ in their interpretation of the procedural effect of this order. The order read in part as follows: "Plaintiffs' [Kirkhams'] motion to set aside the Court's directed verdict for defendants [Wrights] on defendants' Count I of their counterclaim sustained, since the judgment was against the weight of the evidence and the law." The threshold question is whether the trial court intended its order to be construed as an entry of judgment in favor of the Kirkhams or, as the Wrights argue, a grant of a new trial on the issue of the Kirkhams' retaining wall.

The Wrights observe that the order clearly grants a new trial on the Kirkhams' claim for monetary damages against the Wrights. From that order, the Wrights conclude that the trial court also intended to have the issue of the tie-wall retried. The Kirkhams vigorously dispute this position and assert that the order which set aside the injunction is a judgment on the merits in favor of the Kirkhams, denying the Wrights injunctive relief.

We believe the trial court's order in this instance is properly construed as granting

---

1. The Wrights' motion was incorrectly denominated as one for directed verdict. Because this was a court-tried equitable claim, it should

properly be considered a motion for judgment. *Moser v. Williams,* 443 S.W.2d 212, 214–15 (Mo. App.1969).

a new trial on the issue of the retaining wall. Our review of the order in its entirety provides the basis for our decision. The net effect of the trial court's order, if its rulings on both the Wrights' motion for new trial and on the Kirkhams' motion to set aside the injunction previously granted are considered motions for new trial, is to restore both parties to their pre-trial status.

The Kirkhams emphasize that the prayer in their motion to set aside the injunction requested judgment be entered in their favor, not for a new trial. They stress that the judge's intention to find for them on the merits is clear also because he considered and reversed his judgment for an injunction after the jury had returned its verdict in favor of the Kirkhams. They theorize his action was consistent with the jury verdict "because if the jury found in favor of Plaintiffs [Kirkhams] on their suit for nuisance from the swimming pool and swale, then it would be incongruous and contradictory for the trial court to say, in effect, that plaintiffs' response to defendants' nuisance did itself create a nuisance." Reformulated, when the jury returned its verdict that the Wrights had created a nuisance, the Kirkhams' response of building the tie-wall and drain was reasonable, so that the Wrights were not entitled to an injunction.

The Kirkhams' argument presumes the jury verdict prompted the trial court's reversal of its earlier order of injunctive relief. The flaw in this reasoning is that the trial court ultimately set aside the jury verdict when it granted the Wrights' motion for new trial. We do not believe the jury verdict had any effect on the trial court's decision to reverse its earlier order granting the injunction. Thus, we conclude with our original assessment the trial court intended that its final order disposing of all post-trial motions restore the parties to their pre-trial status.

In treating the trial court's order granting the motion to set aside the injunction as one ordering a new trial on that issue, our standard of review set out earlier herein controls. Keeping in mind our determination is whether the trial court has clearly abused its discretion, *Holtgrave v. Hoffman*, 716 S.W.2d at 334–35[2], we address the two issues raised by the Wrights in their cross-appeal.

The Wrights first contend that the trial court's initial decision granting the injunction was supported by the law and by the weight of the evidence and that its subsequent decision to set aside the injunction was against the weight of the law and an abuse of discretion under the circumstances. They also contend the trial court erred in granting the motion to set aside the injunction previously ordered because the Kirkhams' motion to set aside failed to state any legitimate ground to support the motion. Finding neither point to have merit, we affirm the decision of the trial court.

The Wrights' first point attacks the trial court's order setting aside the injunction as "against the weight of the law and an abuse of discretion under these circumstances." The Wrights assert that the earthen berm and railroad tie wall built by the Kirkhams with the effect of casting water onto the Wrights' property clearly constitute a nuisance. They argue that once the trial court judge had ordered an injunction to remove the tie wall, his reversal of that earlier order without any additional evidence adduced was an abuse of discretion under these circumstances. We do not believe the trial court clearly abused its discretion in deciding to set aside its prior order with granting a new trial on the issue whether the earthen berm and railroad tie wall constituted a nuisance.

Since 1884, Missouri has followed the common law rule, often described as the common enemy doctrine, concerning a landowner's liability for obstructing the flow of surface waters. *Pollock v. Rose*, 708 S.W.2d 218, 219 (Mo.App.1986) (*citing Abbott v. Kansas City, St. Joseph & Council Bluffs RR.*, 83 Mo. 271 (1884)).

■ Under the common enemy doctrine, every man is entitled to dam against surface water to ward it off his land even if in so doing he casts water back upon his neighbor. *Pollock v. Rose*, 708 S.W.2d at 219[1]; *Schifferdecker v. Willis*, 621

S.W.2d 65, 67 (Mo.App.1981). Despite adherence to the common enemy doctrine concerning surface water, Missouri courts have recognized a modification to this doctrine. A landowner is not protected by the common enemy doctrine if he unnecessarily collects water and discharges it at one place creating damage to his neighbor in the process. *Pollock*, 708 S.W.2d at 219[2]; *Schifferdecker*, 621 S.W.2d at 67.

Whether the Kirkhams' use of their land was unreasonable or inappropriate in constructing the railroad tie-wall and earthen berm must be balanced against the actions of the Wrights. The Kirkhams defended their erection of the tie-wall as directly attributable to excess surface water on their property allegedly caused by the Wrights' conduct in building their pool and swale.

Where conflicts in testimony exist in a court-tried case, we assume the trial court believed the testimony consistent with its judgment. *Pollock*, 708 S.W.2d at 219. We defer to the trial court's evaluation of the credibility of the witnesses and may not disturb its judgment if it is supported by substantial evidence and the law has been correctly declared and applied. *Id.* We do not believe the trial court was under any misapprehension concerning the law of surface water nor do we question its assessment of the evidence in deciding to order a new trial on the issue of the earthen berm and railroad tie-wall, as well as the Kirkhams' action. Point denied.

The Wrights' second point is that the Kirkhams' motion to set aside failed to state any legitimate ground to support the motion. The record refutes the Wrights' contention. The Kirkhams' four page motion presented the trial court with their arguments that the trial court's original order granting injunctive relief effectively declared their retaining wall to be a nuisance *per se*. They also argued the distinction between permanent and temporary nuisances. Whether these are "legitimate" grounds to support their motion is of no concern to us. The trial court granted the motion to set aside stating its earlier order was against the weight of the evidence and the law. We find nothing in the record which would compel us to conclude the trial court clearly abused its discretion in so deciding. Point denied. Judgment on the cross-appeal is affirmed.

In sum, we uphold the trial court's judgment granting not only the Wrights' motion for new trial but also the Kirkhams' motion to set aside the court's directed verdict for the Wrights on count one of the Wrights' counterclaim, thereby entitling the parties to a new trial on the Wrights' counterclaim as well. We conclude that neither the Kirkhams' direct appeal nor the Wrights' cross-appeal has raised an issue mandating our reversal. We affirm the judgment of the trial court in all respects.

KAROHL, P.J., and SMITH, J., concur.